## ST. JOSEPH HOSPITAL *v.* QUINN, ET AL.

[No. 147, September Term, 1965.]

372

*Decided February 14, 1966.*

*Motion for rehearing filed March 16, 1966, denied March 28, 1966.*

The cause was argued before HAMMOND, MARBURY, OPPEN-HEIMER, BARNES and McWILLIAMS, JJ.

*Samuel S. Field, III,* for appellant.

Amicus curiae brief filed by the State of Maryland. *Thomas B. Finan, Attorney General,* and *Loring E. Hawes, Assistant Attorney General,* on the brief.

No brief and no appearance for appellees.

HAMMOND, J., delivered the opinion of the Court.

This appeal was brought to resolve the true meaning of the hospital lien law of Maryland, found in Code (1964 Replacement Vol.), Art. 63, §§ 46 through 50. The appellant, St. Joseph Hospital, contends, as it did below, that its lien for the reasonable cost of its services to the injured person attaches to the gross amount of the recovery from the tort-feasor, a contention which the trial judge rejected, finding that the lien of the attorney for the claimant-patient for his legal services in the matter came first and the hospital lien covered only the dollars that remained after payment of the fee.

Section 46 of Art. 63 gives a hospital which has served:

> "* * * any patient injured by reason of an accident not covered by the Workmen's Compensation Act * * * a lien upon fifty per cent. of that part going or belonging to such patient, of any recovery or sum had or collected or to be collected by such patient * * * whether by judgment or by settlement or compromise to the amount of the reasonable and necessary charges of such hospital * * * provided further, that said lien shall be subordinate only to the lien of any attorney or attorneys for his, her or their professional services in collecting or obtaining said damages."

Section 47 provides for the filing in court of the hospital lien and the giving of notice of the lien to interested persons and entities. Section 48 imposes a second liability for the amount paid upon one who, after the filing and mailing of the notice, makes:

> "* * * any payment to such patient or to his attorneys * * * as compensation for the injury sustained * * * without paying to such hospital the amount of its liens * * * or so much thereof as can be satisfied out of the moneys due under any final judgment or compromise or settlement agreement after paying the amount of any prior liens * * *."

Section 49 gives the right to those properly interested to examine the hospital records to ascertain accrued charges and estimate the full amount of a potential lien, and Section 50 prescribes the mechanics of the recording of a hospital lien.

St. Joseph Hospital treated an infant for personal injuries which it was claimed had been tortiously inflicted, and duly established its lien in the amount of $763.45. Settlement was agreed on in the amount of $833.45 by the legal representatives of the infant and the tort-feasor and in a friendly suit judgment was entered for that amount. A difference of opinion ensued as to how the recovery was to be divided. It was agreed that the attorney whose professional efforts had produced the fund was entitled to be paid his contingent fee of $277.00 (approximately one-third of the sum recovered), but the controversy remained as to how the remaining $556.45 was to be split. The hospital claimed that its lien attached to the gross amount of the settlement judgment so that its statutory fifty per cent should be half of $833.45, or $416.73, leaving only $139.72 for the injured infant. The infant's mother claimed that the hospital lien entitled it to only $278.22, that is, half of $556.45, the net amount remaining after the deduction of the attorney's fee of $277.00 from the gross settlement of $833.45.

Judge Harris agreed with the mother and the hospital appealed. No brief was filed on behalf of the injured infant, but the Attorney General entered the case as amicus curiae, arguing in his brief on behalf of public hospitals and private hospitals which render aid for which the State often eventually pays in whole or in part, that a hospital is entitled to half of the whole recovery, up to the amount of its reasonable and proper bill, and that the attorney's fee must come from the remaining half (although conceding that if the attorney's fee cannot be fully satisfied from the one-half of the award going to the patient then the one-half impressed with the hospital lien may be diminished accordingly, as where, for example, "* * * the award is $500 and the attorney's fee is $300 [in which case] the hospital lien would be only $200, rather than $250").

The search for the intention of the Legislature must start and end with the words of the statute considered in light of the background of the enactment and its purpose, aided by estab-

lished presumptions and rules of statutory construction. In the background when the statute was passed was (a) the plight of hospitals which gave aid to those injured by the negligence of another and which, if the patient would not pay voluntarily, could only recover their charges from the recovery by suit and attachment, an unsatisfactory if not often completely useless procedure; (b) the fact that the great majority of recoveries in negligence cases were effectuated for their claimant-clients by lawyers whose fees were contingent on success and payable only from the fund recovered; and (c) the further fact that some ten other states had passed laws giving hospitals a lien in various ways in tort cases. The obvious purpose of the Maryland lien law was to insure that the lawyer, the hospital and the injured person each received some share of the amount recovered from the tort-feasor.

In this setting we turn to the words of the statute and rules of construction to find what these respective shares were intended to be.

The hospital lien law of Maryland was enacted as Ch. 491 of the Laws of 1937, not long after New York had adopted a similar statute as Ch. 534 of its Laws of 1936, now codified in N. Y. Lien Law § 189 (1965 Supp.), subdivisions 1 to 11. New York's law gave each hospital a lien "* * * for the amount of the reasonable charges of such hospital * * *" upon all rights of action, suits and claims of patients receiving care as the result of another's negligence which the patient may assert against the tort-feasor. It has provisions for filing and giving notice of the lien similar to those of the Maryland statute. The lien attaches to any verdict, decision, decree, judgment or final order of a court and to the proceeds of a settlement or compromise before or during court proceedings. It provides further that after the filing and mailing of the notice of lien one who makes payment to an injured person or his legal representative shall remain liable for the amount paid "* * * less the amount of any other liens or claims against such moneys superior to such hospital lien * * *," these provisions being analogous to those of § 48 of Art. 63 of the Maryland Code. It has a provision for inspection of hospital records like those of § 49 of Art. 63. Finally, in subdivision 7 it was provided, as

it was the next year, in slightly different words, in § 46 of Maryland's law that "* * * the lien herein created shall be subject and subordinate to the lien of the amount recovered * * * of any attorney or attorneys retained * * * to prosecute * * * [the] claim * * *." See 37 Colum. L. Rev. 1036 (1937) for a discussion of the New York law and references to similar laws of other states.

The New York courts have uniformly held that the fee of the claimant's attorney for his services in producing a fund for his client is payable ahead of the lien of the hospital and that the hospital lien attaches only to what is left of the gross fund after deduction of the fee of the lawyer.

"The attorney for the injured person has, of course, by section 189, subdivision 7, of the Lien Law, a priority of lien which cannot be subjected to the lien of the hospital." *Ferguson v. Ruppert,* 3 N. Y. S. 2d 9, 14. "These proceeds did not arise until the attorney's efforts and skill brought about the determination of the liability of the defendant for the accident. It is only the net amount received by the father [of the injured infant] after the payment of expenses incurred to obtain the recovery to which the equitable lien might attach." *Abbondola v. Kawecki,* 29 N. Y. S. 2d 530, 532. See also *Bey v. Motor Vehicle Accident Indem. Corp.,* 236 N. Y. S. 2d 831; *Rivera v. Hellman,* 258 N. Y. S. 2d 25.

The similarities of design and wording between the New York statute and the Maryland statute and the near coincidence in time of their enactments suggest that the Maryland law was patterned after that in New York. The rule that a statute taken from another state will be deemed to have been intended to have the meaning ascribed to it by the courts of the originating state would not be strictly applicable here for two reasons. The statutes are not precisely identical in plan and wording and the construing decisions in New York came after the passage of the Maryland enactment. Nevertheless we find the New York decisions persuasive as to the meaning of the Maryland act.

When the Legislatures of New York and Maryland enacted the hospital lien laws of their respective states there was a significant difference in the law of the two jurisdictions. New York recognized the common law charging lien of an attorney and

had declared it by a statute, to be found in N. Y. Judiciary Law § 475. See *In Re Heinsheimer* (N. Y. 1915, Cardozo, J.), 108 N. E. 636, which pointed out that at common law there were two liens available to an attorney to secure his fee. The retaining lien was a general lien on all papers, securities and money of his client which came into his possession in the course of his professional employment and was dependent on possession. The other was the charging lien which bound a judgment recovered through the attorney's efforts for the value of the services rendered in the action. The charging lien did not depend upon possession for if the lawyer got possession of the proceeds of the judgment he had the general retaining lien. Judge Cardozo said in *Heinsheimer* of the common law charging lien at p. 637:

> "This charging lien still exists under our statutes. It has been enlarged to the extent that it now attaches to a cause of action even before judgment. 'From the commencement of an action or special proceeding' the attorney now has a lien 'upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, decision, judgment or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come.' Judiciary Law (Consol. Laws, c. 30) § 475. Except as thus changed, the charging lien is to-day what is was at common law."

Thus, when subdivision 7 of § 189 of the Lien Law of New York said "* * * the lien herein created shall be subject and subordinate to the lien of the amount recovered by verdict * * * judgment or decree, settlement or compromise, of any attorney or attorneys * * *," the superior attorney's lien to which it referred undoubtedly was the charging lien.

Maryland has given recognition to the retaining lien but has never recognized the common law charging lien. This Court said in *Ashman v. Schecter*, 196 Md. 168, 176:

> "In Maryland an attorney who has obtained a judgment for his client has no lien for an attorney's fee on the judgment which has not been reduced into posses-

sion by actual collection, but his claim other than for the taxed costs must be asserted like a claim arising upon any other contract. *Marshall v. Cooper,* 43 Md. 46, 62; 2 Poe, Pleading and Practice, 5th Ed., sec. 54. The charging lien, as distinguished from the retaining lien, has never been recognized in Maryland."

See also *United States v. 72.71 Acres of Land, Etc.,* 167 F. Supp. 512 (D. C. Md.) (Chesnut, J.).

This being so the question inevitably and immediately arises as to what "* * * lien of any attorney * * *" the Legislature of Maryland meant in § 46 of Art. 63 when it said the hospital lien "* * * shall be subordinate only to the lien of any attorney or attorneys for his, her or their professional services in collecting or obtaining said damages." We start with the fundamental rules of construction that a statute must be read as a whole to ascertain its true meaning and that all parts must have been intended to have meaning and to result in an operative statute. *Dept. of Tide. Fisheries v. Sollers,* 201 Md. 603, 611. Before language in a statute may be rejected by a construing court as meaningless or surplusage, it must be certain that the Legislature could not possibly have intended the words to be in the statute. "[B]efore words can be regarded as surplusage it must be clear that the enacting body could not possibly have intended the words to be in the legislation." *Armco Steel v. State Tax Comm.,* 221 Md. 33, 44, citing *Pressman v. State Tax Commission,* 204 Md. 78. See also *Comptroller v. A. Cyanamid Co.,* 240 Md. 491. There is the further presumption that the Legislature had full knowledge of and information as to existing law and legislation on the subject matter of the statute it was enacting. *Herbert v. Gray,* 38 Md. 529, 532; *Gibson v. State,* 204 Md. 423; *Bell v. State,* 236 Md. 356.

If the words of § 46 of Art. 63 making an attorney's lien superior to the hospital lien are considered under these tests of statutory meaning, it must be apparent that they refer, as far as the attorney's lien is concerned, either to a retaining lien or a charging lien. There would seem to be at least two reasons why a retaining lien was not intended. First, the attorney's lien is stated to be for services performed in "collecting" or "obtaining" damages. The meaning and connotation of "ob-

taining" would seem to be broader than reducing a judgment or settlement into money in the hands of a lawyer and yet money in hand is the only money on which a retaining lien would be impressed. Second, § 48 of Art. 63 indicates that a charging lien, not a retaining lien, was in the contemplation of the Legislature. That section renders liable for a second payment any person (or entity, including an insurer) who, after the filing in court and mailing of the notice of lien makes payment:

> "* * * to such patient or to his attorneys * * * as compensation for the injury sustained * * * without paying to such hospital the amount of its liens as set out in § 46 of this article or so much thereof as can be satisfied out of the moneys due under any final judgment or compromise or settlement agreement after paying the amount of any prior liens * * *."

These provisions make it reasonably plain, when read with those of § 46, that the lien of the attorney, to which the hospital lien was to be "subordinate," was to be satisfied first by the one responsible for paying the amount of the judgment in, or settlement of, the tort claim before the lien claim of the hospital, which would be fifty per cent of the balance of the recovery, was satisfied, and that, finally, the injured person would receive what was left of the recovered sum after payment of these two lien claims.

It would seem to follow that the Legislature did not contemplate that there would come into the hands of the lawyer a fund on which a retaining lien would attach; since the payor of the tort-feasor's monetary liability was to pay the lawyer's fee and the hospital lien before the injured person (or his lawyer on his behalf) was paid anything.

If a retaining lien was not referred to in § 46, the words of that section giving priority to the lien of the lawyer either are meaningless or they contemplate a charging lien. The first possibility must be rejected since the statutory language can readily be given a sensible construction as meaning, in the particular context in which it is found, that the Legislature created a superior charging lien as part of the grant of a similar but subordinate lien to hospitals. If the article "a" had been used

instead of the article "the" so that the language was that the hospital lien "* * * shall be subordinate only to a lien of any attorney * * *," there could be little doubt that a charging lien had been created, and we see no reason why it should not be so read because we think it is clear that the Legislature intended to give the lawyer for the tortiously injured patient a first and superior lien for the amount of his fee on the fund he produced.

> "The cardinal rule of statutory construction is that the court should ascertain from the entire statute the intention to be accomplished by the enactment. When that intention is clear it should be carried out, even though it may be necessary to strike out or insert certain words." *Pressman v. State Tax Commission, supra* at 90.

See also *Baltimore Lumber Company v. Marcus,* 208 F. Supp. 852 (D. C. Md.) (Watkins, J.).

We have read language in the Workmen's Compensation Act (Code (1964 Replacement Vol.), Art. 101, § 57), which does not use the term "charging lien," as in effect creating such a lien. (The statute provides that no person shall charge or collect "* * * any compensation for legal services * * * or for services or treatment rendered or supplies furnished * * * unless the same be approved by the Commission," and that "when so approved, such fee or claims shall become a lien upon the compensation awarded * * *.") We said in *Hoffman v. Liberty Mutual,* 232 Md. 51, 55:

> "The effect of the above mentioned statute and rule [promulgated by the Commission] is to impose a lien in the amount of the attorney's fee upon a part of the award equal to the amount of the fee approved by the Commission, which is to be held in escrow by the insurer. It is this amount in escrow to which the lien attaches. This is an interception of the money in the hands of the insurer."

It is worthy of passing notice that § 46 of Art. 63 expressly removes Workmen's Compensation cases from the ambit of the hospital lien law, in all likelihood because under the Compensation Act the employer or insurer must pay the hospital bills

of injured workmen and the charging lien of the workman's lawyer.

Although the question of the nature and effect of the attorney's lien was not free from difficulty, we have had no trouble in deciding that the contention of St. Joseph Hospital that the hospital lien attaches to the gross amount of the recovery even though the lawyer gets paid his fee first is unsound. Unlike the provisions of the New York hospital lien law, and those of some other states, the lien of the hospital under Maryland's act does not attach to the injured person's right of action or to the judgment recovered against the tort-feasor or to the amount of the settlement, but under § 46 to "* * * that part going or belonging to any patient, of any recovery or sum had or collected or to be collected by such patient * * *." This indicates to us not, as St. Joseph Hospital argues, that the reference is to the share of any one claimant in a case where there are multiple claimants or plaintiffs, but that the "part going or belonging to any patient" is that part remaining after the fee of the lawyer is deducted. It is argued by the Attorney General that the claimant is personally liable to pay the fee of his lawyer and therefore that fee should be charged against what passes to the claimant after the hospital is paid its lien. This argument overlooks the customary arrangement in negligence cases of the contingent fee. The claimant obligates himself only to pay a fee from what the lawyer produces from the tort-feasor. The Legislature, we think, recognized both this usual practice and the fact that it is the efforts and skill of the lawyer that produces anything for the claimant and the hospital to share. In its transformation of the former unsatisfactory recourse of the hospital to go against the claimant-patient personally for its bill and against the fund by attachment into a right to have that bill paid, in part at least, from the fund recovered by the lawyer, we think that the Legislature intended to limit the new right of the hospital to half of the amount to which the claimant was entitled after his lawyer was paid.

If we have misread the Legislature's intentions or any of the meanings of the hospital lien law, an easy and quick remedy is at hand since the Legislature is in session across the street as this opinion is filed.

*Order affirmed, with costs.*