MARYLAND INDUSTRIAL DEVELOPMENT
FINANCING AUTHORITY, ET AL. *v.*
MEADOW-CROFT

[No. 199, September Term, 1966 (Adv.).]

516

*Decided July 20, 1966.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, MARBURY, OPPENHEIMER and McWILLIAMS, JJ.

*Edward L. Blanton, Jr., Assistant Attorney General,* with whom was *Thomas B. Finan, Attorney General,* on the brief, for the appellant.

Amicus curiae brief filed by the County Commissioners of Cecil County, *William B. Calvert, County Solicitor, H. Warren Buckler* and *Niles, Barton, Gans & Markell* on the brief.

*Richard W. Case,* with whom were *Edward O. Clarke, Jr.* and *Smith, Somerville & Case* on the brief, for the appellee.

OPPENHEIMER, J., delivered the opinion of the Court.

This appeal involves the validity of the provisions of the statute creating the Maryland Industrial Development Financing Authority under Section 34 of Article III of the Maryland Constitution; it turns on whether the faith and credit of the State have in fact been pledged and, if not, whether the section of the Act which refers to such a pledge is misleading.

The statute before us is Code (1965 Repl. Vol.), Article 41, Sections 266J to 266CC (the Act) as enacted by Chapter 714 of the Laws of Maryland of 1965. The Act creates the Maryland Industrial Development Financing Authority (the Authority) as "a body corporate and politic" and a public instrumentality of the State, consisting of five members appointed by the Governor. The declared purpose of the Act is that "a need exists for new and expanded industrial enterprises to provide enlarged opportunities for gainful employment by the people of Maryland and thus to insure the preservation and betterment of the economy * * * in the interest of the public welfare."

The Authority is one of three statutory stimuli to industrial development. Previous enactments, codified in Articles 23 and 41, permit the issuance of revenue bonds by county governments for the purpose of building industrial facilities for lease to private tenants. There is also a semi-private corporation, known as the Development Credit Corporation; it makes loans to industries operating in the State, not only for the erection of buildings, but also to provide working capital.

The Authority may insure payments under a first mortgage on industrial projects provided the mortgage does not exceed 90 percent of the cost of the project and does not exceed $4,000,000. The total amount of insured mortgages may not exceed, at any one time, $30,000,000. The mortgagor must be either a county or municipality or a local development corporation organized under the law of, and operating within, the State of Maryland. Mortgages secured by real property may not exceed 25 years in duration. The mortgages secured by a

pledge of machinery and equipment may not exceed 15 years. In no event, however, shall the mortgage run beyond the initial term of the lease between the mortgagor and the tenant for which the project was constructed or acquired. The mortgagor, if a county or municipality, is prohibited, by Section 266W, from pledging its full faith and credit to the repayment of the mortgage; the lease must provide for the complete amortization of the mortgage during its initial term. The lease must also require the payment of the insurance premium the Authority requires as a condition to insuring the mortgage which shall not be more than three percent of the outstanding principal obligation. These premiums are deposited in a nonlapsing revolving fund to be used by the Authority to meet its expenses and to pay any obligations it is required to assume pursuant to its insurance program.

Sections 266L and 266Z read respectively as follows:

"The Maryland Industrial Development Financing Authority is authorized to insure the payment of mortgage loans secured by industrial projects, and to this end the faith and credit of the State are hereby pledged, consistent with the terms and limitations of the terms of this subtitle."

"If from time to time in the opinion of the Authority the addition of moneys to the mortgage insurance fund is required to meet obligations, the Authority in writing shall request the Governor to provide sufficient moneys for this purpose. The Governor may submit this request to the next regular session of the General Assembly, as an item of appropriation in the budget bill."

On February 18, 1966, the members of the Authority resolved to approve the application of Lycoming Steel Corporation, a Pennsylvania corporation, for the insurance under the Act of the principal and interest payments of a mortgage to be executed by the County Commissioners of Washington County in order to finance the construction of an industrial project for lease to Lycoming. The appellee, a property owner in and taxpayer of the State, filed a petition for injunction and declara-

tory relief in the Circuit Court No. 2 of Baltimore City against the Authority and its members, asking a declaration that the Act and the transactions proposed by the Authority are unconstitutional and void because they violate Section 34 of Article III of the Maryland Constitution. In the alternative, the petition asks that Section 266L be declared invalid and of no effect because it erroneously declares that the faith and credit of the State would be pledged by the Act to the payment of the principal of and interest on mortgages insured under the Act, and the issuance of a permanent injunction forbidding the Authority and its members to represent in any way that the credit of the State would be so pledged.

The appellants answered, and a hearing was held in which testimony was taken. Thereafter, in a written opinion followed by a decree, Judge Cullen found that Section 266L of the Act is invalid, void and of no effect and granted the injunction prayed. He found the remainder of the Act constitutional and valid. In the argument before us, counsel agreed that if we affirm Judge Cullen's finding that Section 266L contains an erroneous statement and is misleading, and that the appellee is to be enjoined from representing that the credit of the State is pledged under the Act to the payment of the principal of and interest on the insured mortgages, no other question of the constitutionality of the remainder of the Act under Section 34 of Article III of the Maryland Constitution is involved. If the purported pledge of the State's credit in Section 266L is of no legal effect, the Act can be administered to insure mortgages without reliance on the State's faith and credit; only the sale to the public of insured mortgages or interests therein would be involved, and no questions such as those which have been before the Court in connection with the sale of revenue bonds would be presented. See *Lacher v. Board of Trustees of the State Colleges*, 243 Md. 500, 221 A. 2d 625 (1966), and *Waring v. Board of Trustees of St. Mary's College of Maryland*, 243 Md. 513, 221 A. 2d 631 (1966); *Lerch v. Md. Port Authority*, 240 Md. 438, 214 A. 2d 761 (1965); *Castle Farms Dairy Stores, Inc. v. Lexington Mkt. Authority*, 193 Md. 472, 67 A. 2d 490 (1949); and *Wyatt v. State Roads Comm'n*, 175 Md. 258, 1 A. 2d 619 (1938).

In each of these cases, the act providing for the revenue bonds and the bonds themselves expressly stated that the credit of the State was not pledged for their payment.

The question before us is the meaning of Section 266L. Judge Cullen found that Section "unquestionably purports to pledge the State's faith and credit * * * [A.] pledge of the State's faith and credit to the payment of the Mortgage imports an unconditional obligation of the State to pay the principal of and interest on the Mortgage as the same become due—such payments to be made, if necessary, from the general resources of the State."

The pledge is made "consistent with the terms and limitations of the terms of the subtitle." Section 266Z sets forth terms which, in effect, provide that the State is not obligated to pay anything on default of a mortgage and after insurance funds have been exhausted. It may choose to pay, but if it does, that is a voluntary act, not the fulfilment of an obligation. The State may also choose not to pay, and such a choice, under the wording of Section 266Z, is not a breach of an obligation, for no obligation exists.

Judge Cullen, in his opinion, clearly and pungently analyzed the conjunctive impact of the two Sections, as follows:

> "[W]hen the Act is examined, it does not provide for payment of the Mortgage in all events. In the event of a default on the Mortgage, the Authority could exhaust the insurance fund created by Section 266S of the Act. Of course, this fund may be insufficient since Section 266BB only provides for appropriations of $500,000 over a period of five years and the Act permits the insurance of $30,000,000 principal amount of mortgages. If the fund is insufficient, Section 266Z provides that the Authority shall 'request' the Governor for funds and that the Governor 'may submit this (the Authority's) request to the next regular session of the General Assembly.'

> "Thus, there are three contingencies that may preclude timely payment of the Mortgage: (i) the Governor may refuse to submit the Authority's request to the General Assembly, (ii) the General Assembly

may not be in session or may not go into session in time to provide funds when due, and (iii) the General Assembly may refuse to meet the request and appropriate the funds. It is clear that the pledge of the faith and credit and the express provisions of the Act are in conflict.

"The Attorney General argues that Section 266L pledges the faith and credit subject to these provisions of the Act. However, the evidence as to the expectation of investors makes Section 266L a trap for even sophisticated investors. A pledge of the State's faith and credit to a request for funds that may be refused is meaningless, and indeed misleading."

The Authority contends the two Sections are not in conflict because Section 266L, taken in conjunction with Section 266Z, amounts only to an insurance agreement by the State under which it promises, in exchange for a premium, to pay money upon the happening of certain contingencies, as contrasted with an unconditional promise to honor a general obligation of a governmental instrumentality. These contingencies, the Authority argues, are the finding of the Authority that the addition of moneys to the mortgage insurance fund is required to meet obligations, and the submission of this request by the Governor to the next regular session of the General Assembly. The Authority, and the County Commissioners of Cecil County in their brief as amicus curiae, refer to the general principle of statutory construction that where two provisions of an act appear to be inconsistent or contradictory, it is the duty of the court to endeavor to reconcile them so as to effectuate the legislative purpose.

The principle is sound, *St. Joseph Hospital v. Quinn*, 241 Md. 371, 216 A. 2d 732 (1966) and *Department of Tidewater Fisheries v. Sollers*, 201 Md. 603, 611, 95 A. 2d 306 (1953) and cases therein cited, but there is involved here, not only the interpretation of a statute, but the meaning of the Maryland Constitution. The faith and credit provision of Section 34 of Article III has been substantially unchanged since the adoption of the Constitution of 1851. The clause was inserted in that Constitution to re-establish and preserve the State's

credit after a period of deep financial troubles during which Maryland's fiscal standing was seriously affected. *Bonsal v. Yellott,* 100 Md. 481, 497-98, 60 Atl. 593 (1905) ; Hanna, *A Financial History of Maryland (1789-1848),* 105-125.[1] Since the adoption of that constitutional provision, as the record below evidences, the credit of the State has been strong and unimpaired. See Md. State Debt & Finance Comm'n *Report* (1955) and Md. State Planning Comm'n, *Management & Limits of the State Debt* (1953). The record shows that for a long period Maryland bonds have been given a triple A rating, the highest, except for two or three years in the 1940's when they were temporarily reduced to double A.

The generally accepted meaning of a pledge of the faith and credit of a political entity is that the governmental body is unconditionally liable for the payment of the debt, if sufficient money is not otherwise made available. See *Dalton v. State Property & Bldgs. Comm'n,* 304 S. W. 2d 342 (Ky. 1957) ; *State ex rel. Porterie v. Board of Liquidation of State Debt,* 190 La. 520, 182 So. 661 (1938) ; *State v. County of Citrus,* 116 Fla. 676, 157 So. 4 (1934) ; *Alabama State Bridge Corp. v. Smith,* 217 Ala. 311, 116 So. 695 (1928).

At the hearing below, Mr. C. Creighton Riepe, a partner in the Baltimore investment banking firm of Alex. Brown & Sons which has been in business since 1800 and has managed the underwriting of between three quarters of a billion and a billion dollars of municipal bonds, largely in Maryland, testified that:

> "Well, 'full faith and credit' simply means the full taxing power to the full obligation of the unit that borrowed money, whether it be, again, the State or a political subdivision of the State * * * Our conception of the term in the business is that, if there

---

1. "The twentieth and twenty-second sections, prohibiting the contracting of Public Debt, or the loan of the credit of the State, by the Legislature, will, it is to be hoped, prevent her fair name from being again tarnished, as it has been, by a failure to meet her pecuniary obligations to creditors at home and abroad. Honor as well in a State as in an Individual, ought to be as zealously guarded as Liberty." Hinkley, The Constitution of the State of Maryland, 79 (1851).

> should be a default in principal, or interest, on those bonds, measures could be taken to lay additional taxes against all the property in the particular area and even go so far, I suppose, as the actual sale of the properties."

He testified further that the concept of faith and credit "is actually what you borrow your money on." Mr. Riepe's high qualifications as an expert were admitted; his testimony was not contradicted.

In the light of the history of the faith and credit clause, the decisions in respect of the meaning of such a clause, and the long acceptance of that meaning in this State, we hold that the pledge of the State's credit set forth in Section 266L, because of the limitations therein referred to, is of no legal force or effect. The vital faith and credit clause cannot be given the attenuated, conditional and restricted meaning for which the State argues; such a construction would be at fundamental variance with the purpose of the adoption of the clause and its established usage in accordance with that purpose for over a century.

In the argument before us, the Authority advanced the suggestion that this Court can construe Section 266L as meaning that the faith and credit of the State is unconditionally pledged, and that the phrase "consistent with the terms and limitations of the terms of this subtitle" can be construed as referring only to specific ways in which the pledge can be fulfilled without affecting its unconditional nature. Such a construction, in our view, would be inconsistent with the express provisions of the Act and in violation of the clear legislative intent. The Court will not construe the faith and credit clause of the Constitution to mean less than it says, but it will not usurp the legislative function by construing the Act to mean more than the Legislature obviously intended.

That the Legislature did not intend to pledge the State's faith and credit unconditionally is shown not only by the express provisions of the Act but by its history. Dr. Robert M. Sparks, called by the Authority in the hearing below, is the Chief of the Business and Industrial Development Division of the State's Department of Economic Development. He testi-

fied that the passage of the Act was requested by his Department after approval by the Economic Development Commission, because the other two vehicles for inducing new industries to come into the State, the Development Credit Corporation and the Revenue Bond Authority Act, were not providing suitable means to compete with other states. Many other states have enacted statutes somewhat similar to the Act "but the State that we tried to imitate most closely is Rhode Island." The Rhode Island law provides in substance that if the addition of moneys to the mortgage insurance fund is required to meet obligations, the authority shall request the governor to provide sufficient moneys by a day specified for this purpose. The governor shall request the general assembly, if in session, to appropriate sufficient funds, and if the general assembly is not in session or will not be in session within 60 days of that date, the governor shall direct the general treasurer to issue bonds in an amount sufficient to carry out the purpose of the act. The bonds so issued shall be deemed a pledge of the faith and credit of the state.[2] Dr. Sparks testified that these provisions were eliminated from the Act because, it was felt that the program would probably be self-sustaining and "if it is necessary, we can go to the legislature and ask them for more money."

The General Assembly did more than eliminate the provision of the Rhode Island statute in respect of the mandatory

---

2. "If from time to time in the opinion of the authority the addition of moneys to the mortgage insurance fund is required to meet obligations, the authority shall in writing request the governor to provide sufficient moneys by a day specified for said purpose. The governor shall request the general assembly, if in session, to appropriate moneys in the treasury, not otherwise appropriated, for said purpose. If the general assembly is not in session or will not be in session within sixty (60) days of the date specified in the request of the authority, or, if the general assembly has not provided the moneys requested within thirty (30) days of said date, the governor shall direct the general treasurer to issue bonds in an amount at least equal to the amount requested by the authority and as shall be necessary to carry out the purposes of this chapter * * *

"The bonds so issued shall be deemed a pledge of the faith and credit of the state * * *" General Laws of Rhode Island (1956 Edition and 1965 Supplement) Section 42-34-15.

requirement for the issuance of bonds by the general treasurer of that state if the legislature was not in session or did not appropriate the necessary moneys. The Rhode Island act provides that, if necessary, the governor "'shall" request the general assembly, if in session, to appropriate the moneys called for. When the Act was introduced in the Maryland House of Delegates, as House Bill 275, Section 266Z provided like the Rhode Island Act that the Governor "shall" submit the request of the Authority for additional moneys to the General Assembly. By amendment, the word "may" was substituted for "shall." Ch. 714, Laws of Maryland of 1965 at 1038.

In the light of this legislative history, as well as of the express terms of the Act, we find it evident that the General Assembly did not mean the pledge of the State's faith and credit in Section 266L to be unconditional, but on the contrary, intended and provided that the pledge should be subject to the conditions of Section 266Z, and that these conditions made the fulfillment of the pledge not obligatory but optional with both the Governor and the General Assembly.

Judge Cullen's finding that Section 266L is misleading is amply supported by the record. Mr. Riepe testified that, to him, the meaning of the Section was that the State is liable for the payment of the debt, if there is not sufficient money in the insurance fund to pay it. Dr. Sparks admitted that the faith and credit pledge was retained in the Act because "this was necessary in order to create confidence in it." The "typical agreement" executed by the Authority to evidence the issuance of the principal and interest payments under mortgages recites that "the faith and credit of the State of Maryland is pledged by the Enabling Act to performance by the Authority of the covenants on its part to be performed hereunder." The conclusion that investors in the insured mortgages might well believe that the faith and credit of the State is unconditionally pledged when, as we have found, that is not the true construction of the Act, is inescapable.

The Authority contends that the investors in the mortgages here involved are apt to be large financial companies, represented by competent counsel who will analyze all the language of the Act and will advise their clients of the restricted mean-

ing of the State's pledge. In a prior era, when the theory of "caveat emptor" often applied to the representations made in the sale of securities, that argument may have had some weight. Political entities are not subject to the provisions of the Securities Act of 1933, but the action of the Securities and Exchange Commission in respect of a private corporation attempting to market bonds on the basis of such contradictory and misleading statements as Section 266L contains is hardly a matter for conjecture. See *Thiele v. Shields*, 131 F. Supp. 416 (S. D. N. Y. 1955) and 3 Loss, *Securities Regulation*, 1421-1519 (2nd ed. 1961) and cases therein cited. We regard it as immaterial that interests in the mortgages might be resold to private investors who do not have the legal resources to which the Authority refers. No statute prohibiting misleading representations in the sale of securities is necessary for us to uphold the decree of the lower court enjoining the Authority and its members from representing in any way that the faith and credit of the State of Maryland is pledged to the insurance of the principal of and interest on mortgages insured under the Act.

In only one respect are we constrained to differ from Judge Cullen's findings. He held that Section 266L was void, because the Legislature effectively struck that Section from the Act by its amendment of Section 266Z. In this finding, he relied upon the provision of Code (1957) Article 1, Section 17 as to the effect of inconsistent amendments to the same section of the Code. That provision relates to two or more amendments made to a statute already enacted, not to changes made by the Legislature to a bill introduced but not yet passed. Section 266L, therefore, must remain in the Act, but subject to the construction which we have placed upon it.

Under Maryland Rule 875 a, paragraphs 1 and 2 of the decree are modified to read as follows:

> 1. That Section 266L of Article 41 of the Annotated Code of Maryland (1965 Replacement Volume) as enacted by Chapter 714 of the Laws of Maryland of 1965 be and it is hereby construed to mean that the purported pledge of the faith and credit of the State thereunder is of no legal force or effect.
>
> 2. That Sections 266J and 266CC, inclusive, of Ar-

ticle 41 of the Annotated Code of Maryland (1965 Replacement Volume), including Section 266L as hereinabove construed, are hereby declared constitutional, valid and in force and effect.

> *Decree, as hereinabove modified, affirmed; costs to be paid by appellants.*