# DEVELOPMENT CREDIT CORPORATION OF MARYLAND, ET AL. *v.* McKEAN

[No. 327, September Term, 1967.]

*Decided February 6, 1968.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*J. Cookman Boyd, Jr.,* with whom was *Stanford D. Hess* on the brief, for appellant, Development Credit Corporation of Maryland.

*Edward L. Blanton, Jr., Asst. Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellants, J. Millard Tawes, et al.

*W. Hamilton Whiteford,* with whom was *Paul F. Due* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

Development Credit Corporation of Maryland (Development Credit) was created by ch. 822 of the Acts of 1959 (Maryland Code, 1966 Repl. Vol., Art. 23, §§ 412-429) for the purposes of developing and advancing the "business prosperity and economic welfare of the State; to encourage and assist in the location of new business and industry in the State and to rehabilitate existing business and industry * * *" and to do other acts and perform other functions, "the objects of which are the promotion and advancement of industrial, commercial, agricultural, and recreational developments in the State * * *" In furtherance of these purposes, the Corporation was authorized by § 414(b) of Art. 23 to borrow money, to incur indebtedness and to issue bonds. Notwithstanding the fact that Development Credit Corporation is, for all practical purposes, a public instrumentality, stock was issued to certain member banks and some private individuals.

In *Maryland Industrial Development Financing Authority v.. Meadow-Croft*, 243 Md. 515, 517, 221 A. 2d 632 (1966), we recognized that Development Credit was one of three statutory stimuli to industrial development, characterized it as "a semi-private corporation" and noted that it was authorized to make "loans to industries operating in the State, not only for the erection of buildings, but also to provide working capital."

As originally enacted, the first paragraph of § 426 of ch. 822 of the Acts of 1959 read:

"Under no circumstances is the faith or credit of the State of Maryland pledged herein."

Ch. 145 of the Acts of 1966 amended § 426 to read:

"In furtherance of the purposes set forth in subsection (a) of Section 414 of this Article, the faith and credit of the State of Maryland, with the approval of the Board of Public Works, may be pledged to secure bonds, debentures, notes, or other evidences of indebtedness, issued on or after June 1, 1966, by Development Credit Corporation of Maryland as authorized by subsection (b) (1) of said Section 414; provided, however, that the faith and credit of the State of Maryland may not be pledged to secure more than three million dollars ($3,000,000.00) in principal amount of such indebtedness outstanding at any one time. Within the limits of this maximum amount, the Board of Public Works, upon approving a formal request therefor from Development Credit Corporation of Maryland, shall provide for pledging the faith and credit of the State of Maryland for such bonds, debentures, notes or other evidences of indebtedness."

The record indicates that Development Credit had borrowed $1,143,651 from its members; that loans made by member banks had come under criticism by the National Bank Examiners; that three banks had withdrawn from membership; that the tight money market had made it impractical to request further advances from member banks; and that Development Credit had been unable to provide the funds required by worthy

borrowers and might, in fact, be forced to curtail its activities. These were the circumstances which led to the amendment of § 426 in 1966.

On 4 October 1966, the appellee, McKean, instituted a tax-payer's suit in the Circuit Court of Baltimore City against Development Credit, the individual members of the State's Board of Public Works, and the Bank Commissioner. Her petition alleged that § 426, as amended, was in violation of the limitation imposed by § 34 of Art. III of the Maryland Constitution:

"No debt shall be hereafter contracted by the General Assembly unless such debt shall be authorized by a law providing for the collection of an annual tax or taxes sufficient to pay the interest on such debt as it falls due, and also to discharge the principal thereof within fifteen years from the time of contracting the same; and the taxes laid for this purpose shall not be repealed or applied to any other object until the said debt and interest thereon shall be fully discharged. *The credit of the State shall not in any manner be given, or loaned to, or in aid of any individual association or corporation;* nor shall the General Assembly have the power in any mode to involve the State in the construction of works of internal improvement, nor in granting any aid thereto which shall involve the faith or credit of the State; nor make any appropriation therefor, * * *." (Emphasis supplied.)

The petitioner sought the entry of a declaratory decree that § 426, as amended, was unconstitutional and asked that the defendants be enjoined from representing that the faith and credit of the State would be pledged to secure evidences of indebtedness issued by Development Credit.

On 7 November 1967, the lower court entered a decree declaring § 426, as amended, to be unconstitutional, and from this decree the present appeal was taken.

The constitutionality of the loan or pledge of the faith and credit of the State of Maryland has been raised obliquely heretofore, *Johns Hopkins University v. Williams,* 199 Md. 382, 86 A. 2d 892 (1951); *Maryland Industrial Development Fi-*

*nancing Authority v. Meadow-Croft, supra,* but never, so far as we can determine, as directly as in the case before us.

The careful and well considered opinion filed by the chancellor in the case below recognized that while *Johns Hopkins University v. Williams* was distinguishable on its facts, the discussion of the constitutional prohibition of a loan or pledge of the State's credit which appears in the opinion has never been contradicted.

The *Johns Hopkins* case upheld the validity of ch. 414 of the Acts of 1951, which had authorized the sale of State bonds in an aggregate principal amount of $1,500,000 and the delivery of the proceeds of the loan to the trustees of The Johns Hopkins University for the use of its School of Engineering. The Act was attacked on the constitutional ground that it violated the prohibition which appears in Art. III, § 34 of the Maryland Constitution: "The credit of the State shall not in any manner be given, or loaned to, or in aid of any individual association or corporation * * *."

Chief Judge Marbury, who wrote the opinion for the Court, discussed the history of the prohibition in some detail (199 Md. at 385-93). He pointed out that the provision first appeared in the constitution of 1851, and is identical to a clause which appeared in the New York constitution of 1846. It reappeared, virtually unchanged, in the Maryland constitutions of 1864 and 1867, and is conceded to have originated, both in New York and Maryland, from a desire to bring to an end the improvident use of state credit in support of railroads and canals, which had brought both states to the verge of bankruptcy.

In the *Johns Hopkins* case, Chief Judge Marbury drew a distinction between a grant of funds and a loan of credit, holding that there was no constitutional prohibition which prevented the State from making appropriations to private institutions, provided the purpose was public or semi-public, and that if the State borrowed funds and used the funds so borrowed, this was not a *loan* of the State's credit but the *use* by the State of its own credit for a proper purpose. In reaching this result, Maryland adopted the rule that the prohibition against the loan or pledge of a state's credit is directed against the guaranty by a state of the debt of another and is not a limitation on the cre-

ation of an indebtedness for which a state is primarily liable. *Grout v. Kendall,* 195 Iowa 467, 192 N. W. 529 (1923) ; *Hagler v. Small,* 307 Ill. 460, 138 N. E. 849 (1923) ; *Bush v. Martineau,* 174 Ark. 214, 295 S. W. 9 (1927) ; and *Gruen v. Tax Commission,* 35 Wash. 2d 1, 211 P. 2d 651 (1949).[1]

*Maryland Industrial Development Financing Authority, v. Meadow-Croft, supra,* brought this Court a step closer to the case now before us. Ch. 714 of the Laws of 1965 had created the Authority as a public instrumentality of the State, authorized to insure mortgages on industrial plants under certain conditions set forth in the Act. § 266 L of the Act read :

> "The Maryland Industrial Development Financing Authority is authorized to insure the payment of mortgage loans secured by industrial projects, *and to this end the faith and credit of the State are hereby pledged,* consistent with the terms and limitations of the terms of this subtitle." (Emphasis supplied.)

A taxpayer's suit challenged the validity of § 266 L on the ground that Art. III, § 34 of the Maryland Constitution had been violated. Judge Oppenheimer, speaking for this Court, struck down § 266 L on other grounds, since he found a lack of legislative intent to make an unconditional pledge of the State's faith and credit. In considering the meaning of Art. III, § 34, the Court said, 243 Md. at 521-22 :

---

1. The Court in the Johns Hopkins case quoted Grout v. Kendall, *supra,* to explain the reasoning behind this rule and the difference between the secondary liability of a surety and the primary liability of an obligor, 199 Md. at 397:

> "The liability of the surety is always secondary, and not primary. It is a liability for the debt of another, which such other is bound to pay. And herein is the delusion of suretyship. The surety assumes a secondary liability in the optimistic assurance and belief always that the primary debtor will pay, and that he will never be required to perform the obligation. * * * It was to remove this delusion of suretyship, with its snare of temptation, that this section of the Constitution was adopted. It withheld from the constituted authorities of the state *all power or function of suretyship.* It forbade the incurring of obligations by the indirect method of secondary liability."

"The faith and credit provision of Section 34 of Article III has been substantially unchanged since the adoption of the Constitution of 1851. The clause was inserted in that Constitution to re-establish and preserve the State's credit after a period of deep financial troubles during which Maryland's fiscal standing was seriously affected. *Bonsal v. Yellott,* 100 Md. 481, 497-98, 60 Atl. 593 (1905); Hanna, *A Financial History of Maryland (1789-1848),* 105-125. Since the adoption of that constitutional provision, as the record below evidences, the credit of the State has been strong and unimpaired. See Md. State Debt & Finance Comm'n *Report* (1955) and Md. State Planning Comm'n, *Management & Limits of the State Debt* (1953). The record shows that for a long period Maryland bonds have been given a triple A rating, the highest, except for two or three years in the 1940's when they were temporarily reduced to double A.

"The generally accepted meaning of a pledge of the faith and credit of a political entity is that the governmental body is unconditionally liable for the payment of the debt, if sufficient money is not otherwise made available. (Citing cases.)"

The court below concluded that the first paragraph of Code, Art. 23, § 426, as amended in 1966, recited a clear legislative intent that the State should become unconditionally liable for the debts of Development Credit Corporation,

"[I]f sufficient money is not otherwise made available, which is the generally accepted meaning of a pledge of the faith and credit of a political entity * * *. Such an obligation is not a debt within the meaning of the first sentence of Section 34 of Article III of the Constitution and, consequently, is not subject to the conditions therein recited regarding the collection of taxes. It is, however, the extension of credit by the State, as prohibited in the second sentence of said paragraph, if given, or loaned, to any individual, association or corporation."

Since § 426, as amended, clearly violated the constitutional prohibition against the giving or lending of the State's credit, we need not consider the contention that the attempted pledge was for a public purpose.

*Decree affirmed, costs to be paid by appellant, Development Credit. Corporation.*