Bob J. VINZANT, Appellee,

v.

HILLCREST MEDICAL CENTER, Appellant.

No. 51798.

Supreme Court of Oklahoma.

April 1, 1980.

As Corrected April 10, 1980.

Rehearing Denied May 5, 1980.

David L. Ashbaugh, Claremore, for appellee.

Boone, Ellison & Smith by Reuben Davis, Tulsa, for appellant.

HODGES, Justice.

Bob J. Vinzant, appellee, [lawyer] brought a declaratory judgment action for the interpretation of the hospital lien statute, 42 O.S. 1971 § 43.[1] The controversy concerned the priority of liens between the hospital and the attorney who negotiated a settlement for the patient following an automobile accident.

Wanda McDonald [patient] was injured in an automobile accident June 26, 1976. She was treated at Hillcrest Medical Center [hospital] for the resulting injuries and incurred a hospital bill in the amount of $6,555.82. After the accident, she employed Bob J. Vinzant, lawyer, to represent her in an action against the tortfeasor. The patient executed an agreement to pay the lawyer up to 40% of whatever was collected. The hospital properly filed its lien in compliance with the statute.[2] Thereafter, the lawyer negotiated a settlement with the tortfeasor's insurer for the policy limits of the insurance coverage, $10,000.00. Two drafts were issued by the insurance company, one was for $3,404.18, payable to the lawyer and the patient. The lawyer received $1,337.67, or 40% of the draft, and the patient received the balance of $2,066.51. The lawyer retained possession of the second draft in the amount of $6,555.82, which was made payable to the lawyer, the patient, and the hospital. The draft was endorsed in blank without restric-

1. The hospital lien statute, 42 O.S. 1971 § 43 provides:

 "Every hospital in the State of Oklahoma, which shall furnish emergency medical or other service to any patient injured by reason of an accident not covered by the Workmen's Compensation Act, *shall*, if such injured party shall assert or maintain a claim against another for damages on account of such injuries, *have a lien upon that part going or belonging to such patient of any recovery or sum had or collected or to be collected by such patient*, or by his heirs, personal representatives or next of kin in the case of his death, whether by judgment or by settlement or compromise to the amount of the reasonable and necessary charges of such hospital for the treatment, care and maintenance of such patient in such hospital up to the date of payment of such damages: *Provided, however, that this lien shall be inferior to any lien or claim of any attorney or attorneys for handling the claim on behalf of such patient*, his heirs or personal representatives; provided further, that the lien herein set forth shall not be applied or considered valid against any claim for amounts due under the Workmen's Compensation Act in this State. [Emphasis Supplied]

2. The applicable statute providing for notice was 42 O.S. 1971 § 44, which was amended in 1978.

tion· by the patient prior to the filing· of suit.

The crux of the issue is that the lawyer asserts that 40% of the second draft is due and payable to him, while the hospital claims that it is entitled to collect its bill in full, which is equal to the total amount of the second draft. The trial court held that the lawyer should receive 40% of the second draft, and that the hospital was entitled to the balance.

## I

 The hospital not only appeals from the superior imposition of the attorney's lien, but it also asserts that venue in Rogers County was improper. Venue of this action is controlled by 12 O.S. 1971 § 1653, which provides that if one or more individuals are involved in an action who reside in different counties, venue lies in any county where any of the defendants reside or may be served with summons. The sole basis for venue lying in Rogers was the allegation that the patient resided in Oologah, Rogers County, Oklahoma. This allegation was challenged by the hospital which asserted that she resided in Tulsa County, and that Tulsa County was the only county where the action could properly be brought. The trial court found that the patient resided in Rogers County and that venue was proper. This Court has consistently held that the question of fact of residence is for the de-

termination of the trial court and the determination is conclusive upon appeal unless it is clearly against the weight of the evidence.[3] The evidence presented to the trial court was sufficient for it to conclude that the patient's residence was in Rogers County.[4]

 The hospital also argued that the patient was not a necessary or proper party to the declaratory judgment action. This issue was not presented to the trial court, and was raised for the first time on appeal. The hospital's objection is untimely. An objection to a misjoinder of parties must be promptly interposed in the manner provided by law, and failure to do so will preclude the question being raised on appeal.[5]

## II

 The hospital contends that the lawyer did not have a lien because he did not follow the statutory procedure prescribed by 5 O.S. 1971 § 6,[6] enforcement of an attorney's lien. The statute provides for imposition of an attorney's lien from the time of the commencement of an action, or from the filing of an answer containing a counter-claim. The lawyer's position is that he was precluded from perfecting his lien because no suit was filed. He asserts that whether a lien was perfected is immaterial to this appeal. We agree. It is provided by 42 O.S. 1971 § 43 that the hospital's lien is

---

3. *Jones v. Burkett*, 346 P.2d 338 (Okl.1959).

4. Oologah residents, Wanda Timms and Edith Ward, testified that: the patient had her personal effects and belongings at her mother's house in Oologah; the patient's children resided with their maternal grandmother in Oologah; the witnesses saw the patient in Oologah from time to time; and that she would be at home in Oologah for a few weeks, leave for a few days and then return.
Also, the hospital mailed a copy of its lien to the patient at her home in Oologah.

5. *Johnston v. Woodard*, 376 P.2d 602, 604 (Okl. 1962); *Wiggins v. Sterne*, 293 P.2d 603, 605 (Okl.1956).

6. It is provided by 5 O.S. 1971 § 6:
"From the commencement of an action, or from the filing of an answer containing a counterclaim, the attorney who represents

the party in whose behalf such pleading is filed shall, to the extent hereinafter specified, have a lien upon his client's cause of action or counterclaim, and same shall attach to any verdict, report, decision, finding or judgment in his client's favor; and the proceeds thereof, wherever found, shall be subject to such lien, and no settlement between the parties without the approval of the attorney shall affect or destroy such lien, provided such attorney serves notice upon the defendant or defendants, or proposed defendant or defendants, in which he shall set forth the nature of the lien he claims and the extent thereof; and said lien shall take effect from and after the service of such notice, but such notice shall not be necessary provided such attorney has filed such pleading in a court of record, and endorsed thereon his name, together with the words 'Lien claimed.' "

inferior to any lien or claim of the attorney who handles a matter on behalf of the patient. The apparent legislative intent is to provide a certain degree of protection to the lawyer while he effectuates a recovery for his client.

There is no basis for a hospital lien in the absence of a statute. In an attempt to lessen the burden imposed on hospitals by non-paying patients involved in accidents, the legislatures of several states have enacted statutes which give a hospital a lien upon any recovery which the patient might receive from a tortfeasor causing the injuries for which treatment is given.[7] The claimant·obligated herself to pay a fee from what the lawyer recovered from the tortfeasor. The legislature obviously recognized the fact that a contingent fee is the customary arrangement in negligence cases, and that it is the efforts and skill of the lawyer which result in the recovery of anything for the patient and the hospital.

The statute provides that if the injured party asserts or maintains a claim against the tortfeasor because of injuries incurred, the hospital shall have a lien "upon that part going or belonging to such patient of any recovery or sum had or collected or to be collected,"[8] with the proviso that the hospital lien is inferior to any lien or any claim of the attorney handling the matter for the patient. The patient had contracted that the lawyer was to receive 40% of whatever he recovered. The patient, therefore, could only have received $6,000.00. Consequently, the part "going or belonging" to the patient is the part remaining after the fee of the lawyer is deducted.

It is argued by the hospital that even if the lawyer's lien is valid, the amount awarded to him should be reduced by the sum which he disbursed to his client from the first draft. The lawyer is not responsible for payment to the hospital, and wheth-er the patient or the insurer may be liable is not an issue. The trial court was correct in determining that the lawyer was to receive $2,622.32 of the $6,555.82 draft and that the hospital was entitled to $3,933.50.

AFFIRMED.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

OPALA, J., concurs in part, dissents in part.

OPALA, Justice, concurring in part and dissenting in part:

I concur in the court's decision which holds a lawyer's charging lien superior to the statutory hospital lien. I dissent from that part of the opinion which appears to state that settlement proceeds disbursed by an insurance company to a lawyer with an actual statutory notice of the hospital's filed lien claim do not stand impressed, while in his/her hands, with a lien that is superior to the client's net recovery rights.

My view of 42 O.S. 1971 §§ 43 and 44, the pertinent statutes in force when the hospital lien was filed August 3, 1976, is that once the lien has attached when settlement is effected and its proceeds may be identified as a separate fund, it remains impressed thereon when transfer is effected to the lawyer with notice of the hospital's filed lien claim. This is so because while the hospital lien claim is *inferior* to that of the lawyer's charging lien it is *superior* to the client's claim for net recovery. It matters not that the insurer here failed to protect the lien claim by omitting to include the hospital as a payee upon its initial draft to the lawyer and his client. The lien remained impressed, nonetheless, in the hands of the lawyer. When a lawyer disburses— as it was done here—a portion of the client's net recovery knowing full well that the entire settlement, less counsel fees and the amount of the hospital lien, would leave

---

7. See Annot., "Construction, Operation, and Effect of Statute Giving Hospital Lien Against Recovery From Tortfeasor Causing Patient's Injuries," 25 A.L.R.3d 858 (1969).

8. See *St. Joseph Hospital v. Quinn*, 241 Md. 371, 216 A.2d 732, 25 A.L.R.3d 849 (1966), and note 1 where the statute is cited in its entirety.

no net recovery to the client, the lawyer waives his charging lien *pro tanto.* This reasoning finds support in the clear language of the statute, §§ 43 and 44, as well as in *Sisters of Charity of Providence of Montana v. Nichols,* 483 P.2d 279 [Mont. 1971].

Because my views would bring about a sharp break from past practices and inasmuch as the legislative language used in §§ 43 and 44 imparts to lawyers but scant notice of the hospital lien statute's intended effect upon the client's net recovery while it remains in the hands of his/her lawyer, I would allow the trial court's judgment in this case to stand undisturbed. I would make our pronouncement applicable prospectively to those hospital liens which shall have been filed after the decision herein becomes final. *American-First Title and Trust Company v. Ewing,* Okl., 403 P.2d 488, 496 [1965]; *Poafpybitty v. Skelly Oil Company,* Okl., 394 P.2d 515, 519–520 [1964].