STATE of Oklahoma, ex rel.,
DEPARTMENT OF HUMAN
SERVICES, Appellant,

v.

ALLSTATE INSURANCE
COMPANY, Appellee.

No. 56675.

Supreme Court of Oklahoma.

Oct. 13, 1987.

Robert D. Hall, Staff Atty., Oklahoma City, for appellant.

Kenneth R. Webster, McKinney, Stringer & Webster, Oklahoma City, for appellee.

Reuben Davis, Boone, Smith, Davis & Hurst, Tulsa, for amicus curiae Hillcrest Medical Center.

SIMMS, Justice.

The ultimate issue presented in this action is whether the Department of Human Services, as lien claimant under 56 O.S. 1981, § 200, is liable for a pro rata share of the attorney fees incurred in obtaining a settlement from the tortfeasor's insurer? We answer in the negative.

The underlying facts in this case are these. Ellen Bledsaw and her two minor children were injured in a collision with Barbara Jones, Allstate's insured. Mrs.

Bledsaw was a recipient of Aid to Families with Dependent Children, and was thereby eligible to have her medical bills and those of the children paid by the Department through its medicaid program, which it did in the amount of $6,070.75.

As part of the administration of the federal medicaid program, the states are required under federal law to seek reimbursement for payment made on behalf of injured or sick recipients from third parties who are liable for medical expenses. Section 200, supra, provides in pertinent part:

"(a) Whenever the State Department of Public Welfare pays medical expenses for or on behalf of a person who has been injured, or who has suffered a disease, as a result of the negligence or act of another person, the Department shall, if such injured or diseased person asserts or maintains a claim against such other person or tortfeasor for damages on account of such injury or disease, have a lien to the extent of the amount so paid upon that part going or belonging to such injured or diseased person of any recovery or sum had or collected or to be collected * * * whether by judgment or by settlement or compromise to the extent of the amount so paid by the Department; provided, however, that this lien shall be inferior to any lien or claim of any attorney or attorneys for handling the claim on behalf of such injured or diseased person, * * *."

It is undisputed that the Department gave proper notice of its liens in the amount of $6,070.75, to Mrs. Bledsaw and to Allstate. Mrs. Bledsaw retained an attorney to represent her and the children on a 50% contingency contract. Through this attorney Mrs. Bledsaw and her children filed suit against Barbara Jones, and the action was settled for $15,000.00.

To satisfy the settlement, Allstate issued two drafts. The first was in the amount of $8,929.25 payable to Ellen Bledsaw and her attorney. From this draft counsel paid court costs, took his contingency percentage and paid the remaining $3,879.00 to his client, Mrs. Bledsaw. The Department received nothing. The second draft was for the amount of $6,070.75 and made payable to Mrs. Bledsaw, individually and as mother and guardian of the injured children, the Department of Human Services, and her attorney.

The attorney and the Department both claimed rights to these funds and the draft, which became void on its face with the passage of 180 days, was never negotiated. Allstate is holding the proceeds pending the outcome of this litigation.

The attorney contended that the remaining court costs and his contingency share should first be paid from that draft, and then the remaining balance should go to the Department.

The Department then brought this suit to determine these competing claims. Its petition stated two alternative theories of recovery to foreclose its lien and one sounding in conversion seeking damages, including punitive damages for intentionally failing to protect its interest in the proceeds of the settlement after notice of its lien. The Department alleged that Allstate's actions in issuing the first draft payable only to the attorney and the client and not naming the Department as payee after receiving notice of its lien, constituted a conversion of their funds. Department argued that its lien applies to the second check and should be enforced.

Allstate demurred to the petition asserting it failed to state a cause of action and the trial court sustained that position, dismissing the suit. On appeal the Court of Appeals, Division No. 2, affirmed the trial court, relying primarily on an interpretation of our decision in *Vinzant v. Hillcrest Medical Center*, Okl., 609 P.2d 1274 (1980), as supporting, by implication, the notion that a lien claimant should share pro rata with the patient in the cost of attorney fees necessary to obtain a settlement. The Court of Appeals also found that a conflict existed between *Vinzant* and a decision by the Court of Appeals, Division No. 1, in *Hillcrest Medical Center v. Fleming*, Okl. App., 643 P.2d 868 (1982), as to the interpretation of the hospital lien statute, 42 O.S.1981, § 43, which is closely related to the statute involved here. We do not agree

with the Court of Appeals' interpretation of *Vinzant* nor do we agree that a conflict is presented between the holdings in *Vinzant* and *Fleming*. We have previously granted Certiorari, and we vacate the Court of Appeals opinion.

In both *Vinzant* and *Fleming*, competing claims to settlement funds were raised by attorneys and hospitals claiming under § 43, supra, which provides:

"Every hospital in the State of Oklahoma, which shall furnish emergency medical or other service to any patient injured by reason of an accident not covered by the Workmen's Compensation Act, shall, if such injured party shall assert or maintain a claim against another for damages on account of such injuries, have a lien upon that part going or belonging to such patient of any recovery or sum had or collected or to be collected by such patient, or by his heirs, personal representatives or next of kin in the case of his death, whether by judgment or by settlement or compromise to the amount of the reasonable and necessary charges of such hospital for the treatment, care and maintenance of such patient in such hospital up to the date of payment of such damages: Provided, however, that this lien shall be inferior to any lien or claim of any attorney or attorneys for handling the claim on behalf of such patient, his heirs or personal representatives; * * *."

In *Vinzant*, the Court was concerned with a question of priority of liens in a suit brought by the hospital against the lawyer for the injured party. Unlike the instant case, that action involved only questions of priority, for the settlement was not large enough to pay both liens. There was no issue raised there as to the liability of either the patient or the insurer, but only the question of priority of the attorney's lien.

The Court of Appeals' characterization of *Vinzant* as supporting Allstate's disbursal of these funds and imposing a duty of pro rata payment of attorney fees on the Department, is erroneous. So too, is its determination that a conflict exists between *Vinzant* and the Court of Appeals decision in *Hillcrest Medical Center v. Fleming*, supra, as to the interpretation of § 43.

The facts in *Fleming* are very similar to the case before us. Unlike *Vinzant*, Fleming did not involve a question of priority of liens for there, as in this case, the settlement exceeded the total of the liens claimed by the hospital and attorneys. There too the attorney attempted to deduct his contingency percentage from the individual drafts issued by the insurer, not from the settlement as a whole, and then sought to disburse the remainder to his client thereby reducing the settlement proceeds available to the hospital for satisfaction of its lien.

The Court of Appeals disallowed such a procedure and remanded the matter with directions to enter judgment for the hospital in the full amount of its lien, based upon its determination that *Vinzant* is applicable only to those actions concerned with priority between lien claimants where funds are not sufficient for both claims.

In *Fleming*, the court cited decisions from other jurisdictions which have addressed this problem and relied on them to support its conclusion that an attorney may not deduct his contingency fee percentage out of each individual draft, thereby reducing the amount of money available to the hospital. In the lead case of *Sisters of Charity of Providence of Montana v. Nichols*, Mont., 483 P.2d 279 (1971), in a situation remarkably similar to ours, the Supreme Court of Montana held that a hospital is clearly not liable for a pro rata share of the attorney fees incurred in procuring an accident settlement from a third party. There the attorneys and their client received a settlement sufficient to satisfy both the attorneys' fee and the hospital lien but the proceeds were set up in three separate drafts, and the attorneys attempted to deduct their contingency fee from each draft. From the first draft the attorneys deducted their contingency percentage of one-third and disbursed the balance to their client. They then attempted to deduct one-third from the remaining two drafts. The Court rejected the attorneys' claims point-

ing out that there was no basis for the hospital's liability for attorney fees, as there was no express contract and an implied contract could not be found to exist merely because the attorneys in performing the services for their client, had rendered what at most was an incidental benefit to the hospital. Incidental benefits conferred upon a stranger to the contract create no implied contract to pay.

Neither was that court persuaded by an argument that the hospital's situation there was analogous to a subrogation insurer which would share in costs of recovery from a third party, for the hospital's claim is based on a debt owed by the patient in whose shoes the hospital cannot stand.

The court held that the attorney's lien which is, like our attorney's lien, clearly prior and superior to the hospital lien, attaches to the entire settlement proceeds regardless of the number of drafts issued. The court stated:

"Where, as here, the attorney and his client receive a sufficient amount of the settlement proceeds to satisfy the attorneys' fee in full, the attorneys' contractual rights are discharged by payment and no further attorney's lien rights remain. At this point the previously subordinate hospital lien becomes the senior outstanding lien against the balance of the settlement proceeds." At 284.

The client, the court concluded, is "simply not entitled to payment of any proceeds" until the hospital lien is discharged.

■ It should be noted that it was precisely this point, protection of the clear superiority of the hospital's lien over the client's claim to any net recovery, about which Justice Opala expressed concern in his special opinion in *Vinzant*. He warned that the majority opinion might be read as allowing a client's claim superiority over a hospital's lien. We do not so view *Vinzant*, but in retrospect we can see that certain language might be misconstrued. As discussed above, it is the view of this Court that *Vinzant* does not authorize reducing hospital lien proceeds by the attorney's contingency percentage where the settlement is sufficient to satisfy both, and

we find the issues there were plainly limited to questions regarding priority.

Other jurisdictions have addressed claims by attorneys to receive compensation from the corpus of funds impressed by a hospital lien, and, without exception, they have reached the same result as *Sisters of Charity* and *Fleming*. In doing so they have addressed and rejected additional arguments offered by attorneys based on theories of unjust enrichment, quantum meruit and the common fund doctrine. See, e.g., *Maynard v. Parker*, 54 Ill.App.3d 141, 11 Ill.Dec. 898, 369 N.E.2d 352 (1977), *Bashara v. Baptist Memorial Hospital System*, Tex., 685 S.W.2d 307 (1985), *Public Health Trust of Dade County, Florida v. O'Neal*, Fla.App., 348 So.2d 377 (1977), *Wheaton v. Department of Public Aid*, 92 Ill.App.3d 1084, 48 Ill.Dec. 507, 416 N.E.2d 780 (1981), and *Broadlawns, etc. v. Estate of Major*, Iowa, 271 N.W.2d 714 (1978). See, generally, Annot., 25 ALR 3d 358 (1969).

■ We are also persuaded by the reasoning of *Sisters of Charity* and the other cited decisions and hold that the Department is entitled to foreclose its lien in full.

■ The attorney's lien was clearly senior and superior by statute and it attached to the entire settlement. When the attorney and client received the first draft for $8,929.25, an amount sufficient to satisfy the attorney's fee in full, the attorney's contractual rights were discharged and no further attorney's lien remained. The Department's previously subordinate lien became the senior lien against the fund.

The proceeds of the second draft, in the amount of $6,070.75, the total amount of the Department's liens, are obviously the property of the Department. The Department has no obligation, either by statute or contract, to pay the attorney's fee from these funds. The attorney fee was, as stated, paid in full by the first draft and no attorneys' lien remained. The fact that the attorney chose to remit part of his fee to his client is not relevant for our purpose here. The client was not entitled to any disbursement of funds until the Department's lien was discharged. For these

same reasons however, the Department's theory for conversion of the proceeds of the first draft was correctly dismissed by the trial court.

The judgment of the Court of Appeals is vacated. The trial court is reversed and the matter is remanded to the trial court with directions to enter judgment in favor of the Department for the full amount of its lien and such other proceedings as may be necessary to effect this judgment.

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER, SIMMS, OPALA, ALMA WILSON and SUMMERS, JJ., concur.

HODGES and KAUGER, JJ., disqualified.