Jon HOERMAN, Appellant,

v.

WESTERN HEIGHTS BOARD OF EDU-CATION, an independent school district of the State of Oklahoma; Jan Davenport, individually and in her official capacity as President of the Western Heights Board of Education; Lynda Howeth, individually and in her official capacity as Vice President of the Western Heights Board of Education; Brent Sonnier individually, and in his official capacity as a member of the Western Heights Board of Education; Glen Wallace, individually and in his official capacity as a member of the Western Heights Board of Education; Vivian Stehr, individually and in his (sic) official capacity as a member of the Western Heights Board of Education; and Bruce Miller individually, and in his official capacity as consultant to the Western Heights Board of Education; Jerry L. Colclazier, individually and in his official capacity as attorney to the Western Heights Board of Education, Appellees.

No. 84625.

Court of Appeals of Oklahoma,
Division No. 3.

Oct. 17, 1995.

Certiorari Denied Feb. 28, 1996.

Steven M. Angel, Oklahoma City, for Appellant,

Tracy Pierce Nester, Jeff R. Beeler, Oklahoma City, for Appellees.

## OPINION

HANSEN, Judge:

In this action arising from his termination as superintendent of schools for the Western Heights school district (Western Heights or

Board), Appellant, Jon Hoerman (Hoerman), seeks review of the trial court's orders granting summary partial judgment for Appellees, and the court's judgment sustaining Appellees' demurrer to the evidence at trial.

## BACKGROUND AND FACTS

The record reflects Hoerman began his duties as Western Heights superintendent in June 1990, having executed a written contract with the school district the previous January. Hoerman was under a one year contract executed February 4, 1991, and effective July 1, 1991, when he was terminated in September 1991.

Appellee, Jan Davenport (Davenport), was appointed to the Board in March 1991, and then was elected to the Board, along with Lynda Howeth (Howeth), Brent Sonnier (Sonnier) and Glen Wallace (Wallace), in May 1991. Appellee, Vivian Stehr (Stehr) was appointed a member of the school board in July 1991. Appellee, Bruce Miller (Miller), had been Western Heights superintendent until Hoerman assumed those duties, and was hired by Western Heights as a consultant in July 1991. Appellee, Jerry Colclazier (Colclazier), was Western Heights' counsel beginning in June 1991.

After Hoerman was terminated in September 1991, he initiated this action. His *Petition* set forth the following claims [1] violation of free speech and associational rights, in alleged retaliation for Hoerman's public comments about the financial mismanagement of the school district, [2] denial of due process, [3] breach of contract by Western Heights, [4] tortious interference with contract, only against Miller, [5] libel and slander, [6] intentional infliction of emotional distress, [7] discharge in violation of public policy, [8] failure to pay wages in violation of 40 O.S. 1991 § 165.3, and [9] violation of the Open Meetings Act, 25 O.S. 1991 §§ 301 et seq.

Most of Hoerman's claims were disposed of by the trial court's rulings on Appellees' three motions for "partial" summary judgment. The claims which went to trial were the violation of free speech and associational rights claim, as to Western Heights only; the public policy discharge claim, as to all defendants; and the failure to pay wages claim. After Hoerman had presented his evidence at trial and rested, the trial court sustained Appellees' demurrers to the evidence on the constitutional and public policy discharge claims. Hoerman then dismissed the failure to pay wages claim, leaving no claim against any party remaining. Hoerman now brings his appeal from the trial court's judgment.

## SUMMARY JUDGMENT—STANDARD OF REVIEW

 Hoerman first contends the trial court erred in granting summary judgment because there existed substantial factual disputes as to several issues. Summary judgment is appropriate where it appears there is no substantial controversy as to any material fact, and that a party is entitled to judgment as a matter of law. *First State Bank v. Diamond Plastics*, 891 P.2d 1262, 1266 (Okla. 1995). All inferences to be drawn from the underlying facts will be reviewed in the light most favorable to the party opposing the motion for summary judgment. *First State Bank v. Diamond Plastics*, at 1266.

## HOERMAN WAS NOT DENIED DUE PROCESS

Hoerman asserts summary judgment was improper on his procedural due process claim because questions of material fact remained as to whether the Board acted as a fair and impartial hearing tribunal. We find the record does not support this assertion.

 The Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantees that no state shall deprive any person of life, liberty or property without due process of law. In the context of employment rights, the issue will normally be property and/or liberty interests.[1] The United States Supreme Court, in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), determined that before a public employee

---

1. The Employee may enjoy a property interest in his position and a liberty interest of standing and reputation in his profession. *Staton v. Mayes*, 552 F.2d 908 (10th Cir.1977).

who possessed such interests was dismissed, he was constitutionally entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and a pretermination opportunity to present his side of the story.

■ In 70 O.S. 1991 § 6–101.13, our Legislature has presumed constitutionally protected interests by mandating essentially the *Loudermill* due process requirements where a local board of education determines dismissal or nonreemployment of a full-time certified administrator, such as Hoerman, should be effected. Hoerman's assertion here is that the mandated hearing, if the administrator chooses to request a hearing, must be before an "impartial tribunal". We agree that is the law, but find Hoerman failed to establish lack of impartiality of the Board.

■ "A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases". *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955). While it appears the issue of bias in administrative boards has not been addressed in Oklahoma, our sister courts have held that a presumption of impartiality exists in favor of those serving in quasi-judicial capacities and that the burden of establishing a disqualifying interest rests on the party making the assertion. *Sifagaloa v. Board of Trustees*, 74 Haw. 181, 840 P.2d 367 (1992); *Martin v. Montezuma–Cortez School District*, 809 P.2d 1010 (Colo.App.1990).

A decision maker may be shown to be biased if he has a personal or financial stake in the decision that may create a conflict of interest, or if the decision maker has personal animosity toward the person affected. *Martin v. Montezuma–Cortez School District*, at 1015 (citing *Hortonville Joint School District No. 1 v. Hortonville Education Association*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976)). Hoerman does not argue Board's members were disqualified for the foregoing reasons, but rather argues the Board cannot be considered an impartial tribunal because the members actively campaigned to terminate him.

■ Hoerman's argument is essentially the argument made in *Staton v. Mayes*, 552 F.2d 908 (10th Cir.1977). There, as here, the superintendent of schools was dismissed after a hearing by the board of education. The Circuit Court of Appeals found certain statements and actions by members of the board of education revealed "a tribunal not meeting the demands of due process for a hearing with fairness and the appearance of fairness". We find, however, the facts in *Staton v. Mayes* and those before us are distinguishable.

In *Staton v. Mayes*, there was undisputed proof that the three board of education members voting for dismissal had made prehearing public statements that the superintendent should be removed. In fact, one of the members campaigned on that issue, and the other two, who had already been elected, apparently authorized the candidate to state they agreed the superintendent should be terminated.

In the case before us, there is no such evidence establishing predetermination by the Board's members. The evidentiary materials before the trial court reflected Davenport, Howeth, Sonnier and Wallace, who ran as a slate of candidates for the Board, were concerned with Hoerman's policies, but that they made a considered decision not to make Hoerman's termination a campaign issue.

Davenport noted in her deposition, ". . . everyone was cautioned about [making Hoerman the issue], that to remain objective about it and wait and see who was elected and to look at the facts before they made any firm opinions [about Hoerman]". Sonnier testified in his deposition that at a campaign strategy session he told the others:

> . . . if we do get elected and get into office, [Hoerman is] entitled to a fair hearing. . . . if we come out and just say we're going to dismiss him, then we have to take that action, . . . We can't run on that slate.

Despite his continued assertions that the Board members "actively campaigned to terminate" him, Hoerman does not direct us to any evidentiary material showing they did so, or that the Board members were otherwise predetermined to dismiss him, as was the

case in *Staton v. Mayes*. The Board members were not disqualified from hearing Hoerman's case simply because they had taken positions, even in public, on policy issues relating to the incumbent administration, in the absence of a showing that they were otherwise biased. *Hortonville Joint School District No. 1 v. Hortonville Education Association*, 426 U.S. 482, 96 S.Ct. 2308, 49 L.Ed.2d 1 (1976). The Board members may not be disqualified by indulging in a presumption against them based purely on their vote to dismiss Hoerman. *Velharticky v. Independent School District No. 3 of Roger Mills County, Oklahoma*, 846 F.Supp. 941 (W.D.Okla.1993).

 A party may not rely on the allegations of his pleadings or the bald contention that facts exist to defeat a motion for summary judgment. *Culpepper v. Lloyd*, 583 P.2d 500 (Okla.1978). The Trial Court's ruling on summary judgment must be based on the record actually presented, not on that which is potentially possible. *Frey v. Independence Fire and Casualty. Co.*, 698 P.2d 17, 20 (Okla.1985). Hoerman failed to meet his burden to establish by evidentiary material before the trial court that material questions of fact remained regarding the Board's impartiality. There was nothing to rebut the presumption of impartiality. The trial court did not err in granting summary judgment on the procedural due process claim.

 Hoerman also asserts the trial court erred in granting summary judgment on his substantive due process claims. Appellees argue we should not consider this assertion because the issue of *substantive* due process was not tendered to the trial court. We agree the issue was not raised below. Hoerman alleged only deprivation of *procedural* due process in his *Petition*, and argued only procedural due process in his response to Appellees' motion for summary judgment. However, while constitutional issues must generally be raised in the trial court to be reviewable upon appeal, due process claims are an exception to that rule. *Roseborough v. Scott*, 875 P.2d 1160 (Okla.App.1994).

 Although we may properly consider Hoerman's substantive due process claim, we find it has no merit. As noted, Hoerman has only raised this issue in his brief on appeal, and his argument there, without benefit of citation of legal authority, is little more than a bare assertion—"In this case, it is submitted, where defendants campaigned to terminate [Hoerman], then undertook to publicly vilify him by making specious charge (sic), 'arbitrary', 'abusive' and 'capricious' action are established". We have noted the lack of evidence Appellees campaigned to terminate Hoerman, and Hoerman does not specify what charges were allegedly specious, how they were specious and by what authority such charges may have been actionable. Further consideration of the substantive due process claim could only be based on speculation and we decline to do so.

## SUBSTANTIAL CONTROVERSY REMAINS REGARDING MATERIAL FACTS OF CONTRACT CLAIMS

Hoerman next contends summary judgment was improper as to his breach of contract claims. He alleged contractual rights under both his written contract with Western Heights, and an implied contract created by Western Heights maintenance of certain policies and procedures. Hoerman alleged his written contractual rights were breached when he was discharged, and that his implied contractual rights were breached when Western Heights removed some duties and responsibilities established under the policies and procedures.

 Hoerman's contract with Western Heights does not contain a dismissal, termination for cause or other similar clause. The contract contains little more than the term, salary and benefits, and a provision that "[t]here are no tenure provisions, property rights provisions or continuing contract provisions with this contract . . .". The lack of an express provision does not, however, mean Hoerman could not be lawfully terminated during the term of his contract.

 Authority for dismissal of a full-time certified administrator is found in 70 O.S. 1991 §§ 6–101.13, 6–101.14 and 6–101.15. Section 6–101.3(2) of that Title defines *dismissal* as "the discontinuance of the teaching

service of an administrator or teacher during the term of a written contract, as provided by law". Existing applicable law is part of every contract as if it were expressly referred to or incorporated within the contract. *Welty v. Martinaire of Oklahoma, Inc.*, 867 P.2d 1273 (Okla.1994). Therefore, Hoerman's employment could be terminated by Western Heights during the term of the contract if done "as provided by law".

Section 6–101.15 mandates administrators be dismissed if convicted of a felony, and allows dismissal if an administrator engages in criminal sexual activity or sexual misconduct that impedes the effectiveness of performance of duties. Those are the only *specific* statutory causes and none applies here. Sections 6–101.13 and 6–101.14 provide for due process hearing and suspension procedures, respectively, where the "board of education . . . has reason to believe that cause exists for dismissal of an administrator".

█ With the exception of those limited circumstances in § 6–101.15, the Legislature has not preemptively specified the grounds for dismissal of an administrator as it has with tenured teachers.[2] By statutory definition, an administrator is not a teacher.[3] In the absence of such specified grounds, we find the Legislature intended that *cause* for dismissal of an administrator be determined upon the facts of each case.

Under the due process procedure set forth in § 6–101.13, the decision of the local board of education concerning dismissal of an administrator is final. There is no right of appeal as provided tenured teachers.[4] In considering a similar question where a teacher, under the law then in effect, had no right of appeal, the Court of Appeals, in *Scherich v. Independent School District No. 42 of Garfield County*, 591 P.2d 1270 (Okla.App. 1979), found:

> But, to say Scherich has no right of appeal to the courts is not to say he has no remedy for a breach of contract, *e.g.*, arbitrary dismissal for willful neglect of duty by the board—*i.e.*, a dismissal founded on no evidence of such neglect.

We find the *Scherich* rationale applies here. To find otherwise would render Hoerman's contractual rights meaningless. While there are no statutory grounds for dismissal as there were in *Scherich*, the Board here was nonetheless obligated under the contract and could only dismiss Hoerman for such cause as was supported by evidence of the acts or omissions alleged. Without established cause, or previous breach by Hoerman, dismissal would constitute breach of the employment contract.

█ In its motion for summary judgment, Western Heights listed certain alleged violations of school policy and state statute as cause for Hoerman's dismissal. Western Heights also argued those same violations constituted breach of contract by Hoerman, which it contends relieved it from further obligation under the contract. The parties agree Western Heights had a statement of policies in effect at the time the contract in controversy was executed. Those policies would be included in the contract by implication. *Miller v. Independent School District No. 56 of Garfield County*, 609 P.2d 756 (Okla.1980).

█ Western Heights contends Hoerman admitted the violations of policy and statute. Hoerman counters that he has not admitted the violations, that evidence of the violations is at least still in controversy, and that, in any event, most of the alleged violations could not be considered against him because they occurred before execution of his 1991–1992 contract. We find no merit in Hoerman's latter assertion. The issue is whether Western Heights had cause for dismissal. Unless otherwise excused or ratified, Hoerman's acts or omissions constituting cause for dismissal are not excluded from consideration by the Board merely because they may predate the contract. To hold otherwise would impose a judicially created limitation period on a superintendent's malfeasance or nonfeasance.

2. *See,* 70 O.S. 1991 § 6–101.22.

3. *See,* 70 O.S. 1991 § 6–101.3.

4. *See,* 70 O.S. 1991 § 6–101.27.

The first violation Western Heights alleged is that Hoerman hired Dr. Lloyd Roettger as an assistant superintendent knowing Roettger was not certified as required by state law. Hoerman asserts Roettger was hired by the previous Board of Education with his recommendation, that the previous Board knew Roettger was pending certification when he was hired, and that when it was learned there would be a delay in certification, Roettger signed a new contract with the previous Board as an administrative assistant.

Western Heights also alleged Hoerman violated state statute and school policy by causing Roettger's name to be included on the school letterhead as an assistant superintendent. Hoerman admits Roettger's name was on the letterhead before Roettger was certified, but again asserts the previous Board was aware of Roettger's status and inclusion on the letterhead.

■ In summary, Hoerman argues hiring Roettger, and including him on the letterhead as assistant superintendent before certification, could not be cause for dismissal if the previous Board approved of, or acquiesced in, those actions. We agree.

■ It is the Board of Education which is the governing body of the school district. 70 O.S. 1991 § 5–106. Under § 5–106, the superintendent of schools employed by the Board is the Board's executive officer, performing such duties as the Board directs. Thus, it is the Board which ultimately stands responsible for the actions of the school district, and the superintendent is responsible to the Board.

■ Because of the relationship between the Board and the superintendent, the Board could excuse the superintendent's acts or omissions, even though the Board, or its members, incur liability. For example, under 70 O.S. 1991 § 6–107, "it shall be unlawful for a *member of the board of education* of a school district to employ, approve or vote for the employment of any person to perform services for such district unless the person employed holds a valid certificate of qualification . . .". (Emphasis added).

■ While the Board may direct the superintendent to advise it on compliance with the law, it is the Board members who are liable if they act in violation of the § 6–107. If the superintendent fails to properly advise the Board, the Board may act against the superintendent, or it may excuse the failure. What the previous Board did with respect to hiring and treatment of Roettger is a material question of fact still subject to controversy.

Western Heights further alleges Hoerman violated state law and school policy by expenditure of school funds for personal long distance calls. Hoerman admits making one long distance call using the school's telephone "by accident". He contends it was his practice to make personal long distance telephone calls using his personal credit card, and that he only discovered the one call while reviewing billing statements after the allegation was made. There is no other evidence of improper expenditure of school funds for Hoerman's personal use. We cannot say, as a matter of law, that such an allegedly accidental improper expenditure of school funds provides a basis for dismissal for cause. The decider of fact should determine whether to accept Hoerman's exculpatory statement.

The only alleged violation during the tenure of the Board which is party to this action is failure to properly prepare the 1991–92 school district budget. Western Heights contends the budget was both untimely and in improper form. Hoerman concedes he was asked to prepare a budget, but argues he did prepare a budget for the Board use in determining its financial standing. The budget submitted to the Board used the format from the prior year, while Hoerman was working on a new format requiring an audit. Hoerman notes he was suspended and terminated before the budget in the new format was required to be submitted. Again, as we have with respect to the other alleged violations supporting the dismissal for cause, we find a question of material fact still in controversy.

■ Summary judgment is inappropriate where, viewing the evidence in the light most favorable to the party opposing the motion for summary judgment, there is substantial

controversy as to material facts. *First State Bank v. Diamond Plastics*, 891 P.2d at 1266. We cannot find as a matter of law that Western Heights was entitled to judgment merely because it purported to have found "cause" for dismissal, or that Hoerman breached his contract by the alleged violations. The trial court erred in granting summary judgment in favor of Western Heights on the breach of contract claim. On remand, that claim is to be allowed to go to trial.

### THE RECORD DOES NOT SUPPORT HOERMAN'S CLAIM OF INTENTIONAL INTERFERENCE WITH CONTRACT

Hoerman further contends the trial court erred in granting summary judgment for Miller on Hoerman's claim of intentional interference with contract. In his *Petition* and *Amended Petition*, Hoerman stated as his claim against Miller:

55. By the acts and conduct of Bruce Miller, *prior to July 1, 1991*, in attempting to undermine the employment of Plaintiff, and to obtain his discharge, defendant has tortiously interfered with Plaintiff's employment. (Emphasis added).

In his deposition, Hoerman testified that to his knowledge Miller did not interfere in any way with Hoerman's job as superintendent prior to July 1, 1991. Hoerman did testify in his deposition he believed Miller interfered with his job *after* Miller was hired as a consultant on July 1, 1991. Also, there are facts set forth in Hoerman's *Petition* which might support an allegation of intentional interference after July 1, 1991, if such a claim had been made.

There was no evidence before the trial court to support Hoerman's intentional interference claim as alleged. The record does not reflect Hoerman requested leave to amend his *Petition* as he might have done pursuant to Rule 13(g), Rules for District Courts, 12 O.S. 1991 Ch. 2, App. Hoerman apparently chose to stand on his intentional interference claim as originally alleged, notwithstanding the lack of evidentiary material to support the claim. The trial court was correct in granting summary judgment in

favor of Miller on the intentional interference with contract claim.

### INDIVIDUALLY NAMED DEFENDANTS WERE ENTITLED TO QUALIFIED IMMUNITY

Hoerman contends the trial court erred in granting summary judgment for the individually named defendants on his constitutional claims. Hoerman claimed in his *Petition* that Western Heights and the individually named defendants violated his constitutional rights of free speech and association by retaliating against him "because of his opposition and public complaints to the financial management of the prior administration, including Bruce Miller". Hoerman lists a series of alleged retaliatory acts, ending with Hoerman's discharge.

The individually named Board members moved for summary judgment, arguing they were entitled to qualified immunity, that there was no evidence of improper motive on their part, and that, by Hoerman's own argument, he admitted the reason the Board members began discussions of his termination was because of his positions on school matters, and not because he spoke out publicly on those matters.

Qualified immunity shields public officials from suit insofar as the official's conduct did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known. *Phillips v. Wiseman*, 857 P.2d 50 (Okla.1993). In *McLin v. Trimble*, 795 P.2d 1035 (Okla.1990), our Supreme Court held that in analyzing a claim of qualified immunity, a court should first address whether the undisputed facts show a legally cognizable claim for relief. If the undisputed facts in the case fail to show the deprivation of any constitutional right as a matter of law then the defendants did not violate a clearly established right. *McLin v. Trimble*, at 1042.

Hoerman alleged as his claim violation of his constitutional rights of free speech and association. Other than his bare assertion, we find nothing in the *Petition* or record supporting Hoerman's allegation his right of association was violated. The right actually

asserted and argued is the right of free speech under the First and Fourteenth Amendments to the United States Constitution.

In his reply to Appellees' motion for summary judgment, Hoerman attempts first to factually support his allegation of retaliation by showing Appellee's "initial animosity toward [Hoerman] was generated because of his public support for a reduction in force among teachers and his public support for a conservative fiscal approach to the district". The period of this alleged initial animosity was at the time the Appellee Board members were contemplating running for the Board.

█ The evidentiary materials before the trial court do reflect Appellees' concerns about the policies Hoerman espoused, but there is simply no evidence they were planning retaliation against Hoerman because he was publicly commenting on those policies. Even Hoerman suggests Appellees' concerns were policy related, by noting in his reply that Sonnier stated in his deposition that Appellees' feelings toward Hoerman were "because of the *position* he had taken on these matters". Hoerman had a protected right to comment publicly on school policies he recommended, but he had no protected right against being held accountable by the Board for the substance of those policies.

Hoerman also attempts to show retaliation by noting one of the specific charges against him in the discharge proceedings "involved his participation in a news interview with" Roettger. The relevant portion of that charge was:

Active participation in the promulgation of a fraudulent newspaper story regarding the Western Heights School program, including active participation and involvement in the interview with the reporter of the Daily Oklahoman at which time the fabrications were transmitted to said report for subsequent publication.

█ The *gravamen of the charge is not* that Hoerman communicated with the press, but that he participated in communicating false information concerning the school's program. Appellees concede Hoerman's right to

make public statements, even to make false public statements, but, as we noted above, he is not relieved of accountability for the substance of what he says. The Board, representing Western Heights, had a legitimate interest in both protecting the school's reputation and in examining the conduct and competence of its executive officer, the superintendent. The evidentiary materials support a finding the Board made its decision to dismiss Hoerman on the record made at the hearing, with nothing beyond Hoerman's speculation that the decision was to retaliate for public comment. Hoerman may not rely on the allegations of his pleadings or the bald contention that facts exist to defeat a motion for summary judgment. *Culpepper v. Lloyd,* 583 P.2d at 502. The charge against Hoerman did not violate his First Amendment rights.

█ The evidentiary materials before the trial court on the motion for summary judgment compel the conclusion Appellees did not violate the Constitution. Thus, they did not violate clearly established law and are immune from suit in their individual capacities. *McLin v. Trimble,* 795 P.2d at 1043.[5] The trial court did not err in granting summary judgment for the individually named defendants on Hoerman's constitutional claim.

### APPELLEES' DEMURRER TO HOERMAN'S EVIDENCE

█ For similar reasons, we find no merit in Hoerman's contention the trial court erred in sustaining Western Heights' demurrer to the evidence on his First Amendment claim. If there is any evidence which tends to show a right to recover, a demurrer must be overruled and the case allowed to continue. *Byford v. Town of Asher,* 874 P.2d 45 (Okla1994). We find there was no evidence tending to show Hoerman had a right to recover on his constitutional claim against Western Heights.

In his brief in chief, Hoerman argues "the evidence is compelling that [Hoerman] was singled out for discharge because of his public support for reductions in expenditures at

**5.** *Also see, Phillips v. Wiseman,* 857 P.2d 50, 52 (Okla.1993).

the school district". However, Hoerman fails to direct us to *any* evidence at trial which tends to show he was dismissed because he exercised his right of free speech.

In fact, the evidence tends to show Hoerman was dismissed because of the charges laid against him, and the only charge involving public communication was the allegation discussed above concerning participation in a fraudulent publication. The Minutes of the September 21, 1991, dismissal hearing were admitted into evidence. Those Minutes contained the findings of fact and conclusions of law adopted by the Board, and reflected the Board's vote to dismiss Hoerman based on the findings and conclusions.[6] Sonnier was called as a witness for Hoerman, and testified on cross-examination that although he recused himself from the dismissal vote because he was a witness at the hearing, he was not aware of any reason for Hoerman's dismissal other than those set forth in the minutes. In the absence of any evidence tending to show Western Heights violated Hoerman's constitutional rights, the trial court was correct in sustaining Western Heights' demurrer.

The absence of evidence of a violation of Hoerman's constitutional rights also disposes of his contention the trial court erred in sustaining Western Heights' demurrer to his public policy discharge claim. That claim is grounded in our Supreme Court's adoption, in *Burk v. K–Mart*, 770 P.2d 24 (Okla.1989), of the public policy tort exception to the termination-at-will doctrine. There the Court limited application of the exception to "cases where the discharge violates public policy mandated by clearly articulated constitutional, statutory, or decisional law". *Tate v. Browning–Ferris, Inc.*, 833 P.2d 1218 (Okla.1992). Because there is no evidence Hoerman's dismissal was in violation of public policy under the *Burk* exception, the trial

court did not err in sustaining Appellees' demurrer.[7]

### TRIAL COURT'S EVIDENTIARY RULING

Finally, Hoerman asserts the trial court erred in refusing to allow him to present testimony of his expert witness "simply because the expert had not examined [Hoerman]." That is the total substance of Hoerman's contention, and is unsupported by additional argument or citation of legal authority. Assignments of error which are not argued or supported in the brief with citations of authority will generally be treated as waived. *Messler v. Simmons Gun Specialties, Inc.*, 687 P.2d 121 (Okla.1984). Finding no reason to except Hoerman's unsupported contention from that general rule, we decline to consider the proposition further.

The trial court's order granting summary judgment in favor of Western Heights on Hoerman's claim for breach of contract is REVERSED. The orders of the trial court granting summary judgment in favor of Appellees on all claims except the breach of contract claim, and the trial court's judgment sustaining Appellees' demurrer to the evidence, are AFFIRMED. This matter is REMANDED to the trial court for further action consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

HUNTER, P.J., concurs.

ADAMS, J., concurs in result.

---

6. Several of the original charges were not approved by the Board.

7. While the issue was not raised by the parties, we note, without so holding, the *Burk* exception would not appear to be applicable here because the length of the employment contract was specified, and the contract did not provide that either party could terminate the relationship without liability. In sum, the employment was not at-will, making an exception to the termination-at-will doctrine inapplicable.