1998 OK CIV APP 124

Stacy YOUNG, Personal Representative of the Estate of McKenzie Mahamed, Deceased, Plaintiff/Appellee,

v.

COLUMBIA SOUTHWESTERN MEDICAL CENTER, an Oklahoma corporation, d/b/a Southwestern Medical Center, Inc., an Oklahoma corporation, Defendant,

and

Oklahoma Health Care Authority, Appellant.

No. 88735.

Court of Civil Appeals of Oklahoma, Division No. 3.

Sept. 18, 1998.

Lynn S. Rambo–Jones, Deputy General Counsel, Oklahoma Health Care Authority, Oklahoma City, for Appellant.

Dennis Butler, Ken J. Graham, Lawton, for Plaintiff/Appellee.

## OPINION

ADAMS, Judge:

¶ 1 The facts in this case are undisputed. As a result of damages sustained at birth, the infant daughter of William and Stacy Young required extensive medical treatment until her death. Because Medicaid benefits had previously been approved for Stacy's pregnancy, Appellant Oklahoma Health Care Authority (OHCA), the state agency designated to administer Oklahoma's Medicaid Program,[1] paid to the medical care providers $96,023.39 of the $177,415.02 total billed for the infant's hospitalization. Thereafter, Plaintiff Stacy Young, as Personal Represen-

---

1. The application was approved by the Department of Human Services (DHS), the state agency originally designated to administer the Oklahoma Medicaid Program until the Legislature transferred such to OHCA, effective January 1, 1995. *See* 63 O.S.Supp.1993 § 5009.2. DHS was also authorized to recover medical expenses paid by DHS on behalf of injured and diseased persons from tortfeasors/insurers pursuant to 56 O.S. 1991 § 200, until November 1, 1996, when the Legislature amended that section, renumbered it as 63 O.S.Supp.1996 § 5051.1, and transferred the duty to OHCA.

tative of the Estate of McKenzie Mahamed, deceased, filed a wrongful death action against Defendant Columbia Southwestern Medical Center, an Oklahoma corporation, d/b/a Southwestern Medical Center, Inc., an Oklahoma corporation (collectively, Hospital).

¶2 Within four months, the parties settled the matter for the sum of $500,000, and Young dismissed her action against Hospital with prejudice. Because OHCA, who was not a party in the wrongful death action and did not participate in the settlement negotiations, declined the request by Young's attorney to reduce the amount of its $96,023.39 lien, Young moved for a hearing to determine what part of that claim should be paid.[2]

¶3 OHCA filed a response brief, arguing that its lien should be paid in full because the settlement was sufficient to pay her attorney and OHCA. At the hearing held the next day, during which OHCA appeared as a lien claimant, Young's expert witness, Mr. Ashton, a local attorney with 28 years experience in personal injury cases, testified that in his opinion, if the Youngs were to win the issue of liability in front of a jury, the likelihood of which he assessed at 25%, the damages suffered by the Youngs would be in excess of $500,000 and that the settlement of $500,000 in this case represented a compromised settlement, not a full recovery of the damages sustained by Young. Young testified about the injuries her daughter sustained upon birth allegedly caused by Hospital's negligence and the resulting loss and pain and suffering. On cross-examination, she testified she had agreed to pay her attorney a 40% contingency fee and that she decided to settle based on the advice of her counsel that the chances of winning would be small. Resolving this dispute, the trial court awarded OHCA forty percent (40%) of its $96,023.39 lien, after finding that "Plaintiffs reached a compromised settlement in this case, however, they were not fully compensated as a result thereof. Further, if this case was tried to a jury and the jury found defendant herein to be liable, said verdict would have been in excess of the settlement agreement reached between the parties."

¶4 OHCA appeals, arguing, *inter alia*, that the trial court's reduction of its lien is contrary to 63 O.S.Supp.1996 § 5051.1, and *State ex rel. Department of Human Services v. Allstate Insurance Company*, 1987 OK 91, 744 P.2d 186. OHCA contends it is entitled to the full amount of its lien because the $500,000 settlement in this case clearly exceeds the total of Young's attorney's lien (40% of $500,000, or $200,000) and its $96,023.39 lien.

¶5 *Allstate* involved a similar situation where the injured party had settled the claim for an amount sufficient to pay the attorney fee and the Department of Human Services' lien filed under § 5051.1's precursor, 56 O.S. 1991 § 200. The Court clarified confusion arising from previous cases, and held that the client or injured party's claim was inferior to that of DHS. Applied in this context, this rule required OHCA's lien to be discharged before Young was entitled to receive any disbursement of funds.

¶6 These remedial devices owe their existence to legislative enactments, and the terms prescribed by the statutory texts are the measure both of the right and the remedy. Liens must be strictly confined within the ambit of legislation giving them birth. *Kratz v. Kratz*, 1995 OK 63, 905 P.2d 753. To affirm the trial court's decision reducing the amount of OHCA's lien, which is clearly superior to Young's claim, would be in effect giving her claim priority over OHCA's statutory lien, contrary to § 5051.1.

¶7 However, Young claims the trial court's order was authorized by *Equity Fire and Casualty Company v. Youngblood*, 1996 OK 123, 927 P.2d 572. In *Youngblood*, the injured party received insurance proceeds of less than the undisputed damages because those proceeds represented all of the insurance proceeds available to pay the claim. There was no settlement, as here, of a disputed liability claim by compromise. The trial court's conclusion that Young's claim

---

**2.** In her motion, Young admits OHCA has a lien on the proceeds of the settlement for medical treatment rendered to her daughter prior to her death and that issue has not been raised in this appeal.

had a value of $1,000,000 ignores the element of liability which must be considered in determining the value of any personal injury claim where liability is in question. Young agreed to compromise or "sell" her claim for $500,000 rather than risk a jury determination of no liability. In turn, Hospital agreed to pay or "buy" Young's claim for that amount rather than risk a larger jury verdict. Those negotiations effectively established the value of Young's claim, not the amount for which Young told her attorney to sue or the amount which she might have recovered if liability had been established.

¶ 8 Moreover, *Youngblood* involved what the Court determined was a contract silent on the question of apportionment between the injured party and the medical insurer. In this case, 63 O.S.Supp.1996 § 5051.1(D)(1) and (D)(1)(a),[3] respectively provide that OHCA shall have a lien upon payment of the medical assistance "to the extent of the amount so paid upon that part going or belonging to the injured or diseased person of any recovery or sum had or collected or to be collected by the injured or diseased person, or by the heirs, personal representative or next of kin in case of death of the person, *whether by judgment or by settlement or*

*compromise."* (Emphasis added). *Youngblood* does not apply under the circumstances of this case.

 ¶ 9 Finally, we are unpersuaded by Young's novel argument, unsupported by any authority, that the trial court had the authority to reduce the amount of OHCA's lien because OHCA had the ability voluntarily to accept less than full payment. This argument overlooks the fact that OHCA is the owner of the lien, the trial court is not.

¶ 10 The trial court's judgment is contrary to law and is reversed. The case is remanded with directions to enter judgment in favor of OHCA for the full amount of its lien.

REVERSED AND REMANDED.

HANSEN, J., and BUETTNER, P.J., concur.

---

3. This section's precursor, 56 O.S.1991 § 200(D)(1), is substantially identical.