2010 OK CIV APP 113

Angela EDWARDS, individually, and on behalf of Johnny G. Edwards, an incapacitated person, Plaintiff/Appellee,

v.

ARDENT HEALTH SERVICES, L.L.C., a Delaware corporation authorized to conduct business in the State of Oklahoma; AHS Wagoner Hospital, L.L.C., d/b/a Wagoner Community Hospital; and AHS Tulsa Regional Medical Center, L.L.C., d/b/a Tulsa Regional Medical Center, Defendants,

and

Oklahoma Health Care Authority, Defendant/Appellant.

No. 106,291.

Court of Civil Appeals of Oklahoma, Division No. 3.

May 7, 2010.

Rehearing Denied June 23, 2010.

Certiorari Denied Oct. 11, 2010.

Ashley D. Williams, Lynn Rambo–Jones, Oklahoma City, OK, for Defendant/Appellant.

Michael N. Brown, Abowitz, Timberlake & Dahnke, P.C., Oklahoma City, OK, and Ted Sherwood, Sherwood Law Firm, Tulsa, OK, for Plaintiff/Appellee.

BAY MITCHELL, Judge.

¶1 This case arises from a medical negligence suit filed by Plaintiff/Appellee, Angela Edwards, individually, and on behalf of her husband, Johnny G. Edwards, an incapacitated person (Edwards). Ultimately, the underlying lawsuit was settled and Edwards sought court approval of the settlement. Defendant/Appellant, Oklahoma Health Care Authority (OHCA), objected to the settlement on the basis that Plaintiff's proposed distribution of settlement funds reduced the amount of OHCA's lien for reimbursement of medical bills paid by Medicaid. Subsequent to hearing, the trial court entered its Order Approving the Settlement, Apportionment of Damages and Distribution, which was filed on July 23, 2008.

¶2 On August 5, 2008, OHCA filed a Motion for New Hearing, asserting the trial court erred in reducing OHCA's lien amount. Plaintiff responded by asserting its untimeliness.[1] Plaintiff additionally argued the underlying merits of the matter, asserting the correctness of the trial court's Order Approving Settlement. The trial court thereafter denied OHCA's Motion for New Hearing without noting any specific basis for its decision. OHCA appeals from the trial court's denial of its Motion for New Hearing.

¶3 First, we note the trial court properly regarded OHCA's Motion for New Hearing as the functional equivalent of a motion for new trial regardless of its title. *See Horizons, Inc. v. Keo Leasing Co.,* 1984 OK 24, 681 P.2d 757. We review a denial of a motion for a new trial for an abuse of discretion. *See Robinson v. Okla. Nephrology Assocs., Inc.,* 2007 OK 2, ¶6, 154 P.3d 1250, 1253 (denial of new-trial motion re-

---

1. On March 24, 2010, this Court entered an Order directing the parties to show cause as to why this appeal should not be dismissed. The parties thereafter filed their responses. Upon due consideration, we find OHCA's Motion for New Hearing was *timely* filed in the trial court and therefore, OHCA retained its right to appeal from the denial of the motion.

viewed "for error of a pure question of law or for an abuse of discretion which is arbitrary, clearly against the evidence, and manifestly unreasonable"). Additionally, where a motion for "new trial is denied, the movant may not, on appeal, raise allegations of error which were available to him at the time of the filing of his motion for new trial, but were not therein asserted." *Poteete v. MFA Mutual Ins. Co.*, 1974 OK 110, ¶ 23, 527 P.2d 18; 12 O.S. § 991(b). To the extent OHCA's appellate brief contains new arguments on appeal, we will not address them.

■ ¶ 4 Plaintiff received medical care and treatment for the injury associated with the underlying lawsuit as a Medicaid recipient. OHCA, the state agency designated to administer Oklahoma's Medicaid program, paid to the medical providers $381,917.20 of the $432,605.82 it was billed for Plaintiff's care and treatment. OHCA was neither a party to the underlying medical negligence action, nor invited to participate in the settlement negotiations.[2] Upon the settlement of the underlying action for $1.5 million, Plaintiff sought the trial court's approval of apportionment of damages and payments in an attempt to distribute funds among Plaintiff's counsel for attorney fees, an ERISA health care provider with a medical lien, and OHCA with its Medicaid lien.

¶ 5 Although the record reflects OHCA's lien amount was $381,917.20 (the amount OHCA actually paid medical providers on behalf of Plaintiff), Plaintiff's "Application for

Approval of Settlement, Order for Apportionment of Damages and Order Approving Distribution" proposed the payment of $119,-526.35[3] to OHCA to fully satisfy OHCA's lien. Plaintiff arrived at this proposed number by using a formula which we understand to be:

$1,173,854.84 (asserted total medical expenses)
÷
$3,000,000 (total value of claim as asserted by Plaintiff)
—————
=
.3913 or 39.13% (percentage of medical expense to total total asserted claim value)

Plaintiff then contends 60.87% of the $1.5 million settlement (after attorney fees and costs have been deducted) should go to Plaintiff's loss of consortium claims and 39.13% should be allocated to satisfy the medical liens.

$1,500,000 (settlement amount)
 less
$ 671,072.97 (attorney fees and costs)
—————
=
$ 828,927.10
$828,927 × 60.87% = $504,568 (allocated for loss of consortium claims)
$828,927 × 39.13% = $324,359 (allocated for payment of medical liens)

Of the $324,359 to be allocated for payment of medical liens, the first $200,000 was allocated to pay a previously settled ERISA lien (ERISA initially covered Plaintiff prior to his Medicaid eligibility[4]). The remainder of $124,359 was allocated for the OHCA lien.

2. OHCA argued as a ground for new trial that it did not receive sufficient notice of Plaintiff's Application to Approve Settlement. OHCA received the Application via facsimile on July 16, 2008 for a hearing held on July 22, 2008. On appeal, OHCA asserts the "hearing by ambush" was in violation of procedural due process. Plaintiff responds by noting OHCA failed to seek a continuance of the hearing in the trial court. Although OHCA's brief in support of its Motion for New Hearing notes counsel for OHCA made an *informal attempt* to obtain a continuance, the record is silent as to any formal attempt. "It is the duty of the party surprised [by new evidence], immediately upon discovery thereof, to take the proper steps to continue or delay the trial in order to protect his interests. He may not neglect this duty, speculate upon the verdict, possibly in the hope of obtaining a favorable decision in spite of such surprise, and then, failing in this, obtain a new trial on account thereof." *Fairmont Creamery Co. v. Marshall*, 1940 OK 377, 105 P.2d 778,

780 (quoting *Ryker v. Dickey*, 1936 OK 392, 57 P.2d 816). While we note OHCA may have neglected to protect itself by way of formally seeking a continuance, we nevertheless admonish Plaintiff's counsel for his failure to timely apprise OHCA prior to settlement as required by 63 O.S. § 5051.1(C), particularly in light of its proposed allocation, which clearly adversely impacted OHCA's interest.

3. Although this is the amount stated in Plaintiff's Application for Approval of Settlement, Order for Apportionment of Damages and Order Approving Distribution, the trial court's Order reflects a slightly higher amount of $124,359.14 for payment to OHCA in satisfaction of the lien.

4. The record reflects that the ERISA lien was for medical expenses in excess of $400,000. This lien amount was compromised to $200,000.

¶ 6 A hearing was held to obtain court approval of the settlement and allocation. Plaintiff's counsel argued that all interested parties should reduce or compromise their claims or liens.[5] Further, Plaintiff contends *Arkansas Dep't of Health & Human Services v. Ahlborn*, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006), a recent U.S. Supreme Court case construing an Arkansas statute, contravenes 63 O.S. Supp.2007 § 5051.1 [6], the statutory lien authority relied upon by OHCA, and mandates the reduction of OHCA's lien. Ultimately, the trial court adopted Plaintiff's proposed apportionment.

¶ 7 OHCA contends the ordered reduction of its lien was contrary to statute and case law and there was no clear and convincing evidence that might permit a reduction. OHCA also contends the formula used for reducing its lien was seriously flawed. OHCA also distinguishes the U.S. Supreme Court *Ahlborn* case, arguing it is inapplicable to the facts here.

¶ 8 OHCA distinguishes *Ahlborn* on the basis that the Arkansas statute at issue there failed to limit the state's recovery/reimbursement from a Medicaid recipient's settlement to payments for medical care. The Oklahoma statute at issue here provides OHCA with a lien "to the extent of the amount so paid ... up to the amount of the damages for the total medical expenses ... unless a more limited allocation of damages to medical expenses is shown by clear and convincing evidence." 63 O.S. Supp.2007 § 5051.1(D)(1)(d). Unlike this Oklahoma statute that limits the lien recovery to the amount of damages for medical expenses and permits an evidentiary showing to justify a more limited or reduced allocation to OHCA, the Arkansas statute was broadly written so as to authorize the satisfaction of the state's lien from settlement proceeds attributable to damages for pain and suffering, lost wages, etc., and therefore ran afoul of the federal Medicaid anti-lien statute. *Ahlborn*, 547 U.S. at 280, 126 S.Ct. 1752.[7] In addition to the statutory

5. Counsel for Plaintiff emphasized that he had reduced his fee from 50% to 43.33% of the settlement after payment of his expenses which were taken off the top.

6. § 5051.1(A–D) provides in pertinent part as follows:

A. 1. *The payment of medical expenses by the Oklahoma Health Care Authority for or on behalf of or the receipt of medical assistance by a person who has been injured or who has suffered a disease as a result of the negligence or act of another person creates a debt to the Authority, subject to recovery by legal action pursuant to this section. Damages for medical costs are considered a priority over all other damages and should be paid by the tortfeasor prior to other damages being allocated or paid.*
2. *The payment of medical expenses by the Authority for or on behalf of a person who has been injured or who has suffered a disease, and either has a claim or may have a claim against an insurer, to the extent recoverable, creates a debt to the Authority whether or not such person asserts or maintains a claim against an insurer.*

\* \* \*

C. *The recipient of medical assistance from the Authority for an injury or disease who asserts a claim or maintains an action against another on account of the injury or disease, or the recipient's legal representative, shall notify the Authority of the claim or action and of any judgment, settlement or compromise arising*

from the claim or action prior to the final judgment, settlement or compromise.
D. *If the injured or diseased person asserts or maintains a claim against another person or tortfeasor on account of the injury or disease, the Authority:*
1. *Shall have a lien upon payment of the medical assistance to the extent of the amount so paid upon that part going or belonging to the injured or diseased person of any recovery or sum had or collected or to be collected by the injured or diseased person up to the amount of the damages for the total medical expenses, or by the heirs, personal representative or next of kin in case of the death of the person, whether by judgment or by settlement or compromise. The lien authorized by this subsection shall:*
a. *be inferior only to a lien or claim of the attorney or attorneys handling the claim on behalf of the injured or diseased person, the heirs or personal representative,*

\* \* \*

*and*
d. *be applied and considered valid as to the entire settlement, after the claim of the attorney or attorneys for fees and costs, unless a more limited allocation of damages to medical expenses is shown by clear and convincing evidence;* (emphasis added).

7. 42 U.S.C. § 1396p(a)(1) prohibits States from imposing liens "against the property of any individual prior to his death on account of medical assistance paid ... on his behalf under the State plan." *Ahlborn* held this federal anti-lien provi-

language differences, OHCA further noted the circumstances in *Ahlborn* were materially different from the circumstances in this case. In *Ahlborn*, the parties entered into the following critical stipulations, which governed the allocation of the Medicaid recipient's settlement proceeds: (1) the value of the underlying claim; (2) that the settlement amounted to only one-sixth of the value of the claim; and (3) the specific amount representing compensation for medical expenses. *Id.* at 274, 126 S.Ct. 1752. Such stipulations are absent here.

¶ 9 While Plaintiff reads the *Ahlborn* case in such a way as to wrap all parties in a pro rata blanket reduction rule, a closer inspection reveals the Supreme Court in *Ahlborn* merely decided that the state's Medicaid reimbursement extends no further than the portion of the settlement representing medical expenses (in that case, the precise amount stipulated by the parties). In contrast to *Ahlborn*, the parties here *strenuously contest the value of the claim and the amount of the settlement that should be attributable to medical expenses.* Further, no party here urges a construction of Oklahoma law, which would violate the pronouncement in *Ahlborn* because the parties agree the OHCA lien extends no further than the portion of the recovery representing medical costs.[8]

¶ 10 Because the stipulations present in *Ahlborn* are absent from the settlement here, a hearing to satisfy paragraph (D)(1)(d) of § 5051.1 was required.[9] Although there was a hearing of sorts, there was no showing "by clear and convincing evidence" to warrant a "more limited allocation" or reduction of OHCA's lien. Because the settlement amount is amply sufficient to pay the Plaintiff's attorney fee and satisfy the OHCA's lien in full, and, because there was no show-

ing by clear and convincing evidence that OHCA's lien should be reduced, OHCA is entitled to recovery of the full amount of its lien.

 ¶ 11 OHCA additionally argues the trial court's reduction of its lien is contrary to 63 O.S. Supp.2008 § 5051.1(D) and twenty years of Oklahoma law including *State ex rel. Dep't of Human Services v. Allstate Ins. Co.*, 1987 OK 91, 744 P.2d 186; *Young v. Columbia Southwestern Medical Center*, 1998 OK CIV APP 124, 964 P.2d 987. OHCA asserts its statutory entitlement to the full amount of its lien because the settlement amount of $1.5 million, and particularly the 39.13% attributed by the trial court to medical costs, is sufficient to discharge its $381,917.20 lien in full. We agree. The Oklahoma statute governing OHCA liens for the recovery of medical expenses expressly provides "damages for medical costs are considered a priority over all other damages and should be paid by the tortfeasor prior to other damages being allocated or paid." 63 O.S. § 5051.1(A)(1). OHCA's lien is "inferior only to a lien or claim of the [Plaintiff's] attorney." *Id.* § (D)(1)(a).

 ¶ 12 OHCA's statutory lien is superior to Plaintiff's claim, of which settlement negotiations effectively established the value. It is also superior to the ERISA lien. From the settlement proceeds, after payment of Plaintiff's attorney fees and costs, OHCA is entitled to payment of $381,917.20, in full satisfaction of its lien. We find the reduction of OHCA's lien is contrary to Oklahoma law, unsupported by the necessary evidence and an abuse of the trial court's discretion. Upon remand, the trial court is instructed to

---

sion prohibits Arkansas from asserting a lien on the Medicaid recipient's settlement in an amount in excess of the medical expense compensation portion of the settlement (stipulated by the parties at $35,581.47). *Ahlborn*, 547 U.S. at 292, 126 S.Ct. 1752.

8. The *Ahlborn* Court expressly refrained from deciding whether a state could adopt special rules or procedures pertaining to allocation of tort settlement proceeds for the purpose of preventing Medicaid recipients from seeking to manipulate their damage allocations in order to

limit or prevent states from asserting a claim for reimbursement. *Ahlborn*, 547 U.S. at 288 n. 18, 126 S.Ct. 1752.

9. Although paragraph (D)(1)(d) does not specifically require an evidentiary hearing, because it does require a showing by clear and convincing evidence, this implies that such a hearing, or other presentation of, and judicial determination of the evidence, is required for the judge to order a reduction of the lien.

enter judgment in favor of OHCA for the full amount of its lien.[10]

¶ 13 REVERSED AND REMANDED.

JOPLIN, P.J., concurs.

ROBERT DICK BELL, V.C.J., concurs in part and dissents in part.

¶ 14 I would agree with the majority that notice should be given to all parties regard-

ing the settlement conference, but I think the distribution of the funds is correct.

**10.** Plaintiff raises a new issue on appeal, questioning the constitutionality of 63 O.S. §§ 5051.1(A)(1); 5051.1(D)(1) and 5051.1(D)(2), citing as authority a recent opinion from the U.S. District Court for the Western District of Pennsylvania, *Tristani v. Richman,* 609 F.Supp.2d 423 (W.D.Pa.2009). Constitutional issues must generally be raised in the trial court to be reviewable upon appeal. Due process claims, however, are an exception to this rule. *Hoerman v. Western Heights Bd. of Educ.,* 1995 OK CIV APP 130, 913 P.2d 684, 689, *cert. denied,* (citation omitted); *see also First Nat'l Bank of Alex v. Southland Prod. Co.,* 1941 OK 87, ¶ 67, 112 P.2d 1087, 1098–99 (permitting discretionary review of the constitutionality of a statute when the public interest and

welfare require such consideration for the first time on appeal). Plaintiff does not assert a due process violation (and notably, the federal Pennsylvania authority cited by Plaintiff specifically holds the Medicaid recipients there failed to establish any procedural or substantive due process claims by the application of Pennsylvania statute authorizing the Pennsylvania Department of Public Welfare to impose liens and obtain recovery from the recipients' settlement proceeds). Considering these authorities, we find Plaintiff's failure to raise her constitutional issue (limited to the claim that the Oklahoma statute allegedly runs afoul of the Supremacy Clause) in the trial court is fatal to consideration of the issue for the first time on appeal.